*Fairfield,*
July, 1847.

Hoyt
*v.*
Seeley.

---

## Lockwood *against* Crawford.

Though the rule of the common law is, that the laws of other states and nations are to be proved here, by documentary evidence or the testimony of witnesses, and the jury are to decide upon the proofs, as in other questions of fact ; yet under a late statute of this state, the reports of the judicial decisions of other states, are not only to be received as evidence of the common law, and of the judicial construction of the statutes, of such other states, but are to be considered by the court; and, of course, it is the province of the court, and not of the jury, to determine what the law in question is.

Where a promissory note was made payable to the order of the payee, on demand, with interest, and was indorsed at the time when it was made; it was held to be a reasonable construction of the instrument, that neither the parties to it, nor the indorser, contemplated an immediate demand, but all regarded the real time of payment as future, and the indorsement as a continuing guaranty.

But in such case, the law requires that a demand be made in a reasonable time, in order to subject the indorser.

What shall be deemed a reasonable time for this purpose, must, to some extent, be determined by the peculiar circumstances of the case; which may be proved by extrinsic evidence.

Where it was shown that the indorser himself, as well as the parties to the

note, which was made on the 25th of *July*, assented to a future day of payment, *viz.* about the 1st of *October* following; and before that time, payment was demanded; it was held, that the demand was in reasonable time.

Where the payee and holder of such note, which had been partially paid, called on the maker for the balance; and the maker, without enquiring for the note, or refusing payment because it was not shown to him, said he could not conveniently pay the balance then, and requested the holder to draw on him for it, at a future time; it was held, that a sufficient presentment and demand appeared.

By the general mercantile law, as well as the law of the state of *New-York*, notice of the non-payment of a bill or note must be given on or before the next day after its dishonour; and it is incumbent on the holder, to show affirmatively, that such notice was given in due time.

Therefore, where it appeared only, that the holder of a note, after it was dishonoured, being an inmate of the indorser's family, informed him of the non-payment of it; it was held, that the notice requisite to fix the indorser's liability, was not shown.

Notice of the dishonour of an indorsed note payable *on demand*, must be given in the same manner as of bills and notes payable on a fixed day.

The case of *Van Hoesen* v. *Van Alstyne*, 3 *Wend.* 75. commented on and explained.

A mere indulgence given to the maker of a note, by the holder, will not discharge the indorser; but to produce this effect, there must be some obligatory contract, by which the holder is precluded from enforcing his remedies against the prior parties, and thus affecting the legal or equitable rights of the indorser.

THIS was an action of *assumpsit*, by the plaintiff, as indorsee and holder of a promissory note, against the defendant, as indorser. The note referred to was made by *Joseph Crawford & Son*, dated *July* 25th, 1839, for 600 dollars, payable to *B. W. Lockwood*, or his order, on demand, with interest.

The cause was tried at *Fairfield, February* term, 1847, before *Hinman*, J.

On the trial, the plaintiff, to prove the demand of payment and notice of non-payment alleged in the declaration, and that such demand was made and notice given, in a reasonable time, and also to prove the agreement or understanding of the parties in relation to the note and the indorsement thereof, and the circumstances under which it was made and indorsed, offered in evidence the deposition of *B. W. Lockwood*, the payee and former holder. Of this deposition the following is an abstract: 1 am a resident of *Columbus*, in *Georgia*. Having business in the city of *New-York*, in the *Summer* of 1839, I was frequently in the company of *Thaddeus Crawford*,

[the defendant,] and in the course of conversation with him, I mentioned to him a draft on *New-York*, which I then had, and which I did not wish to use immediately, and not until I was ready to leave the city for the *South.* Some days after this, *T. Crawford* said to me, if he were in my place, he would let *Joseph Crawford*, (his brother,) have the draft; and further said, that if I would do so, he would indorse *J. Crawford's* note for the amount. To this proposition I acceded, and let him, (*T. Crawford,*) have the draft referred to, which was for 600 dollars; and in the course of two or three weeks, he returned to me *Joseph Crawford & Son's* note, dated *July* 25th, 1839, for 600 dollars, indorsed by himself, *T. Crawford.* In this transaction *T. Crawford* was not my agent; and I took the note of *J. Crawford & Son* entirely on his indorsement. Some weeks afterwards, *J. Crawford* called on me, and paid the sum of 300 dollars, which was indorsed on said note. About the time I got ready to leave for the *South*, I called on *J. Crawford & Son* for the balance. They said they could not conveniently pay it then, but that I could draw upon them for it, at any future time. I spent some time at *T. Crawford's* house, as a relative. I informed him of the non-payment of the balance of the note, by *J. Crawford & Son.* He did not say, that he wished me to commence a suit against *J. Crawford & Son*, or to make any further effort to collect the balance of them. Being ready to leave for the *South*, I could do no otherwise than to take the note with me. A year or so afterwards, I wrote to *J. Crawford & Son*, by mail, that I intended to draw on them for the balance of their note; but I never received any answer from them. In *February* 1844, I transferred their note to *Eleazer Lockwood*, [the plaintiff] and received from him, in exchange therefor, the notes of *John Code* and *Israel Jenny* of the city of *Columbus*, amounting to 500 dollars. This exchange was made as a mutual accommodation to both of us, for the purpose of saving exchange between *Columbus* and *New-York*, and was a *bona fide* trade. I have received the full amount of *J. Crawford & Son's* note from *E. Lockwood*, and gave him, at the time of the exchange, full power and controul over that note, and released to him all my right, title and interest therein. I have now no interest whatever in that note; neither has *E. Lockwood* any interest whatever in the notes of *Code* and *Jenny*."

The defendant objected to the admission of this deposition, insisting that it was not admissible for any of the purposes for which it was offered; but the court overruled the objection, and the deposition was read in evidence, and was, in fact, the only evidence in the cause of the making of the demand and the giving of notice, and of the time when such demand and notice were made and given.

It was admitted, that *B. W. Lockwood* received said note, at the time of its date, and continued to be the holder of it, until *February,* 1844, when it was passed to the plaintiff.

At the time it was given, *B. W. Lockwood* was temporarily in the city of *New-York,* on business; and the defendant and the makers were permanent residents in that city, and continued to be, until after the time when the plaintiff claimed to have proved the demand of payment and the notice of non-payment. *B. W. Lockwood* also, was, during the whole of this time, in that city.

The defendant denied, that any legal demand of payment was ever made of the makers of the note, or that any proper notice of non-payment was ever given to the defendant.

The plaintiff claimed, and introduced evidence to prove, that said note was given for a loan of money, by *B. W. Lockwood* to *J. Crawford & Son,* at the request of the defendant, upon an agreement or understanding of all the parties, that as *B. W. Lockwood* was then expecting to remain in *New-York,* until about the 1st of *October* following, and would not want the use of his money, until about the time of his leaving that city for the state of *Georgia,* (where he was then carrying on business,) the note should remain a continuing security for the money until that time; and that it was made and indorsed in reference to such an agreement or understanding.

The defendant denied, that there was any such agreement or understanding, on his part; and claimed and offered evidence to prove, that the money was loaned, by *B. W. Lockwood,* to the makers of the note, through the agency of the defendant, he acting as such agent, at *B. W. Lockwood's* request; and that his indorsement was made for the mere purpose of transferring the legal title to *B. W. Lockwood,* without any intention in either of them, that he, the defendant, should, in any event, become liable as an indorsee thereof.

The defendant also objected to the parol evidence of the plaintiff, to prove the agreement or understanding of the parties claimed by him, in reference to said note, and the circumstances under which it was made and indorsed ; and he insisted, that the plaintiff must show when notice of non-payment was given to him ; and as all parties then resided in *New-York*, that such notice must have been given, as early at least as the day next following the day on which the demand was made ; and that this was the rule of the commercial law, and also the law of *New-York ;* and to show this, he read the reports of decisions of the courts in *New-York* on the subject. And as the evidence of the plaintiff to prove such notice, did not specify the time when it was given, he insisted, that the proof was insufficient to fix the liability of the defendant, and to subject him as indorser.

The plaintiff claimed, that under the circumstances of this case, and the agreement of the parties, in relation to the note in question, the law of *New-York* was so that notice need not be given, as early as the next day after such demand, but that it might be given in a reasonable time ; and that any time before the 1st of *October*, when *B. W. Lockwood* was to leave the city of *New-York* for the state of *Georgia*, was a reasonable time ; and he claimed, that by the deposition of *B. W. Lockwood*, it was shown, that both the demand of payment of the makers and the notice of non-payment to the defendant, were made and given in a reasonable time.

It was proved and admitted, that the makers of the note paid the sum of 300 dollars, on the 20th of *September* 1839 ; and the defendant claimed, that *B. W. Lockwood*, to whom it was paid, at the time of such payment, gave to the makers further time of payment for the balance ; to prove which, he introduced the depositions of *H. F. Crawford* and *J. Crawford*. The former, a clerk of *J. Crawford & Son*, testified, among other things, that " *B. W. Lockwood*, some time previous to his leaving the city, called at *J. Crawford & Son's*, and got some money on said note—about 300 dollars. The balance due on the note, the deponent thinks, from what *Lockwood* said, was to remain in the hands of *J. Crawford & Son*, until he, *Lockwood*, called for it, or drew drafts against it. He said, he was then going *South*, and should probably want to use money during the *Winter*. The deponent has no knowl-

edge of any call upon *J. Crawford & Son* for the balance due on said note, by draft or otherwise, at any time."

*J. Crawford,* one of the firm of *J. Crawford & Son,* after testifying to the giving of the note in question, the consideration thereof, and the payment of 300 dollars thereon, continued thus : " The deponent told *B. W. Lockwood* he was ready to pay the whole note, at any time ; and he, *Lockwood,* said he did not want the balance then, but might want it before he left for the *South ;* and if he did, he might call for it at that time. He afterwards called on the deponent and said, he might want to use some money at the *South,* during the *Winter ;* and if he did, he should draw for it on the deponent's firm. We told him, he might draw on us, at sight, or in any other way. He did not draw on said firm, or call on them for the balance of the money. The deponent has never seen him since he went *South.*" Afterwards, on cross-examination, the deponent said : " It was the understanding, when *Lockwood* called and got part of the money, that the balance was to lie with the deponent until *Lockwood* called for it ; but such was not the understanding when the note was given."

The defendant thereupon claimed, that such giving of time discharged him.

The plaintiff denied that any indulgence was given, other than what was contemplated by the parties, when the note was given and indorsed ; and denied that any such indulgence as discharged the defendant, was proved.

Each of the parties requested the court to charge the jury in conformity to their respective claims.

The court admitted the parol evidence of the plaintiff, for the purpose of proving the circumstances under which the note was given and indorsed, and the agreement or understanding of the parties, in relation to the time when it was to be paid ; and charged the jury, that if they should find from the evidence, that there was such an agreement or understanding as was mentioned in *B. W. Lockwood's* deposition, then demand of payment of the makers, and notice of non-payment to the defendant, were made and given in a reasonable time, provided this was done within the time so contemplated and agreed upon ; that the note being on interest, was a circumstance tending to show, that the understanding was,

that it should not be paid immediately ; but was not, of itself, sufficient to show, that it was to remain until the 1st of *October ;* and to suffer it to remain until that time, was unreasonable, unless there was such an understanding, as was mentioned in *B. W. Lockwood's* deposition : that if there was such an agreement, to which the defendant was a party, at the time he indorsed the note, he could not now be permitted to say, that the demand was unreasonably delayed, if it was made within the time thus contemplated : that the demand proved by *B. W. Lockwood's* deposition was sufficient, if, at the time he made it, he had the note with him, ready to be delivered up, provided it had been paid ; and that it was for the jury to say, if they believed his deposition, whether it was not fair to infer from it, that he had the note with him, at the time he made the demand.    In regard to the proof of notice of non-payment, and the giving of time claimed to be proved by the defendant, the court instructed the jury, *pro forma,* that if they should find the other facts as claimed by the plaintiff, they might find a verdict in his favour, if they should think that the giving of notice, as testified in *B. W. Lockwood's* deposition, was done in a reasonable time, after the demand of payment was made ; and that the depositions of *H. F. Crawford* and *J. Crawford* did not prove any such giving of time as would discharge the defendant.

The jury returned a verdict for the plaintiff ; and the defendant, conceiving that the court erred in admitting the testimony by him objected to, and in charging the jury, moved for a new trial.

*Hawley,* in support of the motion, contended, 1. That the charge was erroneous in respect to the presentment.    In the first place, there was no evidence to go to the jury of any presentment whatever.    The only testimony was that of *B. W. Lockwood ;* and he, who must have known the fact, if it existed, is silent on the subject.    It is perfectly consistent with his testimony, that there was none ; and his silence is evidence that there was none.    Secondly, if *B. W. Lockwood* demanded payment, it is not shown that *he had the note with him,* when he made such demand.    The charge authorises the jury to presume, that he had ; but there was *no evidence* to support such a presumption.    This was a fact which

*Fairfield,*
*July, 1847.*

Lockwood
*v.*
Crawford.

the plaintiff was bound to prove, either by direct testimony, or by circumstantial evidence. Here was neither. 1 *Saund. Pl. & Ev.* 291. (356.) 271. (331.)  2 *Kent's Com.* 97. n. *Chitt. Bills*, 260. *b.* n. 270. n.  *Freeman* v. *Boynton*, 7 *Mass. R.* 483.

2. That the demand, if in fact made, was not *in season*, being three months or more after the date of the note. No parol evidence was receivable, to show an agreement or understanding different from that furnished by the *note* and *indorsement*. The law merchant determines the import of a blank indorsement; and no parol evidence is admissible to vary it. 7 *Conn. R.* 303. per *Peters*, J. The safety of the commercial world requires that this should be so. *Sice* v. *Cunningham*, 1 *Cow.* 397. 407. Our rule regarding notes not negotiable, has no application here. It is *peculiar* to such paper. *Castle* v. *Candee*, 16 *Conn. R.* 224. 234. Secondly, the transaction took place in *New-York*, and is to be governed by the laws of that state. Thirdly, the question was improperly left to the jury: it belonged to the court to decide it. *Bryden* v. *Bryden*, 11 *Johns. R.* 187. 189. *Pattison* v. *Hull*, 9 *Cow.* 747. *Free* v. *Hawkins*, 8 *Taun.* 92.

3. That there was no evidence that notice was given in season. It should have been as soon as the next day after that of the demand. There was no evidence tending to show that it was given *then*, nor when it was given. 3 *Kent's Com.* 106. and n. *a.* *Woodbridge* & al. v. *Brigham* & al. 12 *Mass. R.* 403. *Whitwell* & al. v. *Johnson*, 17 *Mass. R.* 449. *Field* v. *Nickerson*, 13 *Mass. R.* 131. *Darbishire* v. *Parker*, 6 *East* 3. *Tindal* v. *Brown*, 1 *Term R.* 167. *Haynes* v. *Birks*, 3 *Bos. & Pul.* 599. 601. *Jackson* v. *Richards*, 2 *Caines* 343. *Smith* v. *Mullett*, 2 *Campb.* 208. *Jameson* & al. v. *Swinton*, 2 *Campb.* 373,4. *Hartford Bank* v. *Stedman* & al. 3 *Conn. R.* 489. And here again, the question was improperly left to the jury to say what was a reasonable time. *Bryden* v. *Bryden*, 11 *Johns. R.* 189. *Hussey* v. *Freeman*, 10 *Mass. R.* 84. *Whitwell* v. *Johnson*, 17 *Mass. R.* 449. *Tindal* v. *Brown*, 1 *Term R.* 167. *Belden* & al. v. *Lamb*, 17 *Conn. R.* 441.

4. That the defendant was discharged, by the time given to the makers. The testimony showed, *B. W. Lockwood* looked to the makers only for payment; at least, that ques-

tion should have been put to the jury. *Shaw* v. *Griffith*, 7 *Mass. R.* 494. *Crain* v. *Colwell*, 8 *Johns. R.* 384.

*Booth* and *Butler*, contra, contended, 1. That the parol testimony was admissible. Upon the question of reasonable time, all attendant, collateral facts and circumstances are admissible. *Perkins* v. *Catlin*, 11 *Conn. R.* 213. *Castle* v. *Candee*, 16 *Conn. R.* 223. *Van Hoesen* v. *Van Alstyne*, 3 *Wend.* 75. *Sice* v. *Cunningham* & al. 1 *Cow.* 397. 1 *Greenl. Ev.* 340. 353. *Brent's* exrs. v. *The Bank of the Metropolis*, 1 *Peters* 89. *Beckwith* & al. v. *Angell*, 6 *Conn. R.* 315. 317. & seq. *Barker* v. *Prentiss*, 6 *Mass. R.* 430. *Sto. Prom. Notes*, *s.* 148.

2. That the demand of payment was in a reasonable time. It was within the time contemplated by the parties, and within three months from the date of the note, which was *on interest.* *Van Hoesen* v. *Van Alstyne*, 3 *Wend.* 75. *Sice* v. *Cunningham* & al. 1 *Cow.* 397. *Wethey* v. *Andrews* & al. 3 *Hill* 583. *Losee* v. *Dunkin*, 7 *Johns. R.* 70. 71. n. a. *Sanford* v. *Mickles* & al. 4 *Johns. R.* 224. *Vreeland* v. *Hyde*, 2 *Hall* 429. *Barough* v. *White*, 4 *B. & Cres.* 325. (10 *E. C. L.* 345.) *Gilbert* v. *Dennis*, 3 *Metc. R.* 495.

3. That the notice of non-payment was in a reasonable time. In the first place, it was so, by the general commercial law. Admitting the rule to be absolute, where the paper is payable on time, and made for commercial purposes, or even where it is payable on demand, and there are no special circumstances; yet where there is a special understanding as to the time of forbearance, to which the indorser is a party, as in this case, notice within that time is sufficient. *Mechanics Bank of New-York* v. *Griswold*, 7 *Wend.* 165. 168. See also *Vreeland* v. *Hyde*, *Sice* v. *Cunningham* & al. and *Van Hoesen* v. *Van Alstyne*, above cited. *Field* v. *Nickerson*, 13 *Mass. R.* 131. But secondly, whether it be so or not, by the general commercial law, such is the law of the state of *New-York*, where the note in question was made, and endorsed. See the cases already referred to.

4. That the depositions of the *Crawfords* do not show such giving of time as will discharge the indorser. They do not show that the right to sue was suspended. *McLemore* v. *Powell*, 12 *Wheat.* 554. *Bank of the United States* v.

*Fairfield,*
*July, 1847.*

Lockwood
*v.*
Crawford.

*Hatch,* 6 *Peters* 250. *Wood* v. *Jefferson County Bank,* 9 *Cow.* 194. *Hewett* & al. v. *Goodrich,* 2 *Car. & Pa.* 468. (12 *E. C. L.* 219.) *Philpot* v. *Briant,* 4 *Bing.* 717. (15 *E. C. L.* 126.) *Pole* v. *Ford,* 2 *Chitt. R.* 125. (18 *E. C. L.* 273.) *Margesson* v. *Goble,* 2 *Chitt. R.* 364. (18 *E. C. L.* 368.) *Bank of Utica* v. *Ives,* 17 *Wend.* 501.

CHURCH, Ch. J. The record shows this to have been a *New-York* transaction. The note in question was executed and indorsed in the city of *New-York,* by residents there; and our decision of some, if not of all the questions involved, must have respect to the laws of the state of *New-York.* Those laws we presume to be the common law, as understood in *England* and in this state, unless we find a different rule has been adopted, either by statute or judicial decision. A preliminary question suggests itself here. How are we to treat the laws of that state, since the enactment of our statute of 1840 on this subject?

On some of the questions reserved and discussed, it is claimed, that those laws are at variance with the common law, and the court below was referred to the judicial decisions of the state of *New-York* in support of this claim. If these decisions are only evidence of the fact that such laws exist there, and this fact was to be determined as such, by the jury, from this evidence, then it would seem, that the parties, as well as the judge who tried the cause, had mistaken the proper ground of review; and that this motion should have been as for a verdict against evidence in this respect, rather than one founded upon a misdirection on a point of law.

The rule of the common law undoubtedly is, that the laws of other states and nations are to be proved here, by documentary evidence or the testimony of witnesses; in which case, the jury are the judges of the proofs, as in other questions of fact. But our statute has provided an additional and convenient rule of evidence in this matter, and has enacted, " That the reports of the judicial decisions of other states and countries may be judicially noticed, by the courts of this state, as evidence of the common law of such states or countries, and of the judicial construction of the statutes or other laws thereof." We suppose the legislature intended by this law, that the judicial decisions of other states, should not

only be received as evidence of the laws of such states, but that they should be considered by our courts judicially, in the same manner as we consider the decisions of our own courts and of the common law courts of *England*, as furnishing the evidence of our own common law.

If this be so, then it is the province of the court, and not of the jury, from such evidence, to determine, especially when it is the only evidence offered, what is the law of the foreign state. 1 *Bla. Com.* 69. *Owings* v. *Hull*, 9 *Peters* 607. *Brackett* v. *Norton*, 4 *Conn. R.* 517.

The note in question was made on the 25th *July* 1839, payable on demand, and interest, to the defendant, or his order; and was by him indorsed to the plaintiff.

The most material questions in the case arise from the admission of the plaintiff's evidence regarding the demand of payment, and the notice of non-payment. The evidence thus admitted by the court and to which exception is taken, was, that when the note was executed, it was the agreement or understanding of the parties, and of the indorser also, that the note was to lie unpaid until the payee should leave the city for his residence at the *South*, which, it was supposed, would be about the 1st of *October* following, and that the indorsor should remain as continuing surety until that time.

This note is negotiable paper, and subject to the general laws governing such instruments, except so far as it appears that the parties intended to place themselves under different obligations.

By the law, as understood by our courts, as between the maker and payee of a promissory note payable on demand, an immediate demand of payment may be made, and even a suit commenced forthwith, without special demand; and parol proof that the note was payable at some future day, would not be admitted. Such perhaps is the law of *New-York*. But no question of this sort arises here. What are the rights of an indorser of such a note, and when, as to him, is it to be considered and treated as dishonoured, is the question involved.

We can see, without the aid of *Lockwood's* deposition, or other extrinsic evidence, from the tenor of this note, that, neither the parties to it nor the indorsor, contemplated an immediate demand, but all looked to the real time of payment

as intended to be future, and to the indorsement of the defendant as a continuing guaranty. Whether this is legally inferable from the facts that the note was payable on demand, and indorsed at the time of its execution, we need not say; but the additional and important fact in connexion, that it was made payable with interest, renders this construction reasonable. Interest could accrue only from forbearance of payment. *Barough* v. *White,* 4 *B. & Cres.* 325. (10 *E. C. L.* 345.) *Wethey* v. *Andrews,* 3 *Hill* 582. *Vreeland* v. *Hyde,* 2 *Hall* 429.

Although the parties contemplated forbearance and a future time of payment, yet they did not intend that this should be controuled by the convenience or wishes of the immediate parties to the note. The law, in such case, not only in the state of *New-York,* but every where, requires that a demand of payment shall be made within a reasonable time, or the indorser will stand discharged. And what shall be deemed reasonable time, must, to some extent, be determined, by the peculiar circumstances of each case. In the present case, sixty days had not elapsed before demand was made; and aside from the facts disclosed by *Lockwood's* deposition, we cannot say, that the time was unreasonable. But to place this beyond doubt, the deposition of *Lockwood* was offered and admitted; and for this purpose was properly admitted. By this it appeared, that the defendant himself, as well as the parties to the note, assented to a future day of payment, about the 1st of *October,* succeeding the execution and indorsement of the paper. If then the demand of payment was not delayed beyond that time, the defendant cannot say it was delayed unreasonably. This forbearance was probably the very motive which induced the defendant to indorse the note. The facts sworn to by *Lockwood,* were material to determine the question of reasonable time, and not to controul the terms or tenor of the note, as between the immediate parties to it. *Freeman* v. *Hawkins,* 2 *Caines* 369. *Cruger* v. *Armstrong,* 3 *Johns. Cas.* 5. *Conroy* v. *Warner, Id.* 359. *Losee* v. *Duncan,* 7 *Johns. R.* 70. *Murray* v. *Judah,* 6 *Cowen* 484. *Sice* v. *Cunningham,* 1 *Cowen* 397. *Bank of Utica* v. *Smedes,* 3 *Id.* 662. *Mohawk Bank* v. *Broderick* & al. 10 *Wend.* 304. *Seaver* v. *Lincoln,* 21 *Pick.* 267.

But it is still claimed, that no sufficient presentment or demand of payment of the makers of the note, was ever made; and that *B. W. Lockwood's* deposition does not conduce to prove any. We think otherwise. It is true, that it does not directly appear, that the deponent, who was the payee, presented the note in form, and demanded payment; but as he had not, at that time, transferred it, the makers might well presume it continued in his possession, ready to be delivered up upon payment. When called upon for the balance, they did not enquire for it, nor refuse to pay, because the note was not shown to them; on the contrary, they said, that they could not conveniently pay any more then, and requested the payee to draw upon them at a future time; thereby waiving, as they had right to do, a more formal demand.

We are satisfied, therefore, that the demand of payment was legal; and that, at the time mentioned by *B. W. Lockwood,* the note in question, by reason of the neglect and refusal of the makers to pay it, then became dishonoured; and the remaining question is, whether it appears, that the defendant, as indorser, has been so charged with notice of non-payment, as by the laws of the state of *New-York* to subject him to the payment of the note?

It no where appears *when* notice of non-payment was given to the defendant. It seems, that, after the demand of payment was made, the payee was an inmate, as a relative, for several days, of the family of the defendant; and that probably, during this time, he informed the defendant in relation to the non-payment of the note. This is all we know on this subject.

As these parties, then, were all residents of the city of *New-York,* not only the general mercantile law, but the law of the state of *New-York,* constituting, as it does, a prominent portion of that law, required, that notice should be given of the non-payment, on or before the next day after the dishonour of the note; unless the present furnishes an instance of an excepted case. 3 *Kent's Com.* 73. *Chitty on Bills,* 314.

Furthermore, it is a principle received every where, that it is incumbent on the holder of a note or bill to show affirmatively, that notice of non-payment was given in due time: it is a condition precedent to a right to recover, in ordinary cases, against an indorser; and the *onus* of proving it lies upon

Lockwood
*v.*
Crawford.

the plaintiff, and he must not leave it uncertain whether his notice was in time or not. *Chitt.* on *Bills* 314. *Lawson* v. *Sherwood,* 1 *Stark. Ca.* 314.

This being the general principle, the plaintiff's recovery here will be defeated by it, unless the tenor of this note be such as that the strict notice of dishonour required by the laws of negotiable paper, was not in this case necessary. As we have already said, this note must be governed by these laws, except so far as it appears that the parties intended to dispense with them. A party entitled to notice may dispense with it—he may waive it; but in the case of indorsers especially, a waiver will not be presumed, without the most satisfactory proof. Indeed, we hardly know of a case, in which an indorser, who has not expressly waived notice of non-payment, is not entitled to it, except where it has become his own duty to pay the note; as where it was made for his own accommodation, or he had assumed its payment, upon good consideration, before its dishonour, or upon full knowledge of the facts. *Pierpont* v. *White,* 1 *Johns. Cas.* 99. *Agan* v. *McManus,* 11 *Johns. R.* 180. *Trimble* v. *Thom,* 16 *Johns. R.* 154. *Griffin* v. *Goff,* 12 *Johns. R.* 424. *Miller* v. *Hackley,* 5 *Johns. R.* 585. *Jones* v. *Savage,* 6 *Wend.* 658. *Leonard* v. *Gary,* 10 *Wend.* 504. *Mechanics Bank* v. *Griswold,* 7 *Wend.* 165. *Backus* v. *Shepard,* 11 *Wend.* 629. *Holland* v. *Turner,* 10 *Conn. R.* 308. *Thornton* v. *Wynn,* 12 *Wheat.* 183.

The fact that this note was not made payable on a fixed day, but could run until payment was demanded within a reasonable time, certainly could not dispense with the necessity of notice of its dishonour. There is nothing on the face of the note or dehors, intimating that the indorser did not suppose the note would be paid, when demanded; or that he intended to forego a notice, if payment was then refused. In this respect, he stood in the same situation as other indorsers, and for the same reasons. *Free* v. *Hawkins,* 8 *Taun.* 92.

Such we believe, from the cases decided by the highest and most respectable courts in the state of *New-York,* to be the law of that state, as well as of other states, as applicable to the note under consideration.

The plaintiff, on this point, however, relies upon the case of *Van Hoesen* v. *Van Alstyne,* 3 *Wend.* 75. as evidence of the law of the state of *New-York,* and as conclusively appli-

cable to the facts of this case; showing that no notice of non-payment was necessary. If we so believed, we should be governed by that decision, whatever might be our opinion of the doctrine supposed to be established by it. The report of that case is not very satisfactory to us, as decisive of grave questions; but we are under no necessity of pronouncing against it, as being the law of that special case; and the court evidently did not intend to extend it further.

That was not an action against the defendant as an indorser, in which the preliminary question of demand and notice was considered. It was rather thrown collaterally into the case; and it does not appear even, that the note there in question, was negotiable paper. But be this as it may, it was a note transferred long after it became due, and under the peculiar circumstances alluded to by the court, as governing its decision. The holder of the note, within two or three weeks after its transfer, made demand of payment; and this may have been within reasonable and legal time; but he delayed, without any known cause, to give notice of non-payment to the indorser, for two or three months afterwards, although the parties resided within seven miles of each other. If that was a negotiable note, and subject to the laws of such paper, we can only say, that we know of no other case where a demand and notice were necessary at all, in which a delay of two or three months' notice, after payment had been actually refused, and the note by such refusal dishonoured, has been considered excusable. We think that the whole spirit of the law of negotiable paper, in the state of *New-York* and elsewhere, is the other way. But we repeat, that the point relied upon by the plaintiff, in that case and this, was decided in his favour, as we think, on the ground that from the conduct and declarations of the defendant, he did not expect, and in fact had waived, a demand and notice; as well, perhaps, as upon what the court considered the strong equities of the case; for they say, "Justice in this case seems to have been done, and it is to be regretted that it was not done *secun dum artem.*" But in the case we are considering, there are no such circumstances—nothing to persuade us, that the defendant here did not intend to insist upon his rights and privileges as an indorser of the note. The case upon which the plaintiff relies, even if sound law, is not applicable to this. We are,

*Fairfield,*
*July, 1847.*

Lockwood
*v.*
Crawford.

therefore, of opinion, that there is no proof, that legal notice of non-payment was given to the defendant; and that, for this cause alone, a new trial should be granted.

Another question upon the defendant's claim, was suggested, and which, by reason of the opinion just expressed, it is not necessary for us to determine, for the purposes of this trial; but as a new trial is advised, and the same question may again arise, we think proper to dispose of it. It was claimed, that the plaintiff, or the former holder of this note, had so conducted with it, as to give time to the makers, and thereby to discharge the indorser. A mere indulgence given to the maker of a note, by the holder, will not discharge indorsers. To do this, there must be some obligatory contract, by which the holder is precluded from proceeding to enforce his remedies against prior parties, and thus affecting the legal or equitable rights of the surety or indorser. But this has not here been done, nor attempted. No arrangement has been made with the makers of this note, since the defendant has been attempted to be charged as indorser; and if there was any before, the defendant was a party to it. No action has been prosecuted against the makers, to be sure; not by reason of any agreement, however, but only because the holders of the note had no hope of enforcing collection from them. Nothing has been done, in any way, to change, modify, or affect, any of the rights or remedies of the defendant as indorser: all these are as perfect now as ever. *McLemore* v. *Powell,* 12 *Wheat.* 554. *Philpot* v. *Briant,* 4 *Bing.* 717. (15 *E. C. L.* 126.) *Bank of Utica* v. *Ives,* 17 *Wend.* 501.

A new trial is advised, for the reason before suggested.

In this opinion the other judges concurred.

New trial to be granted.