Tomlinson Carriage Co. v. Kinsella.

--------•◦⟨⊙⟩◦•--------

TOMLINSON CARRIAGE COMPANY *vs.* WILLIAM KINSELLA.

Where an account consisted in part of charges for liquors sold in violation of law, and there were payments credited on the account, and it had been agreed between the parties that the payments as they were made should be applied first upon the charges for liquors sold, it was held that, though the agreement was void,

and though the amount paid for the liquors could under the statute be recovered back in a proper suit, yet so far as the payments had been already so applied under the agreement, they could not be diverted from that application and applied to the other items of the account.

Where a note was given payable on demand with interest, and two weeks after a mortgage was given to secure it, and it was agreed that the note should lie so long as the payee was satisfied with the security and the interest was paid, and no notice was given or demand made for two years, it was held that the note was not to be regarded, at the end of that period, as overdue, and that an indorsee of it did not take it as dishonored paper.

The time when such a note is to be regarded as overdue must depend upon the particular circumstances, indicating the intention and understanding of the parties.

And this is properly a question of fact, to be determined by the jury.

BILL for a foreclosure. The following facts were found by the superior court.

The respondent, on the 31st of March, 1857, executed and delivered to Holcomb & Birdsey, copartners, to whom he was indebted, a note for $450, payable to their order, on demand, with interest, and on the 15th of April following mortgaged to them certain real estate for its security. On the 15th of April, 1859, Holcomb & Birdsey indorsed and delivered this note for a valuable consideration to the petitioners and assigned to them the mortgage. At the time when the note was executed the respondent was indebted to Holcomb & Birdsey in the sum of $566.33, as a balance of book account, as follows:

| | |
|---|---:|
| For groceries, other than liquors, . | $965 68 |
| For spirituous liquors, . . . . | 793 45 |
| | $1,759 13 |
| Amount paid by cash and credits, . | 1,192 50 |
| Balance as above stated, . . | $566 63 |

The note and mortgage were given to apply on the account, and as security for the payment of the same. The respondent claimed that the note and motgage were void, as being given in part for spirituous liquors sold in violation of law. The petitioners claimed and offered evidence to prove, that, at the time when the account commenced, it was agreed between Holcomb & Birdsey and the respondent, that whatever pay-

ments should be made on the account should be applied in payment for the liquors sold. But the account was kept on the books of Holcomb & Birdsey in the ordinary way, charging the articles from time to time as they were delivered, and crediting the payments from time to time as they were received, and there was no evidence that any communication was had between the parties in regard to the application of the payments after the making of the agreement; and if the payments should be applied in the ordinary way to the items first becoming due, part of the consideration of the note would consist of spirituous liquors sold in violation of law. The liquors were bought by the respondent for the purpose of being re-sold in the town of Bridgeport, in violation of law, and were so re-sold by him. In answer to this claim of the respondent, it was proved on the part of the petitioners that they received the note from Holcomb & Birdsey on the 6th of April, 1859, for a valuable consideration and in good faith, believing it to be good and collectible.

It was also proved that at the time when the note was given it was agreed between the respondent and Holcomb & Birdsey, that it might lie as long as the payees were satisfied with the security and interest was paid, which agreement was made known to the petitioners at the time of their purchase of the note. There was no proof that any demand had been made either of interest or principal on the note, and no interest had in fact been paid when the note was assigned to the petitioners. They received the note without any notice of any illegality in its inception or transfer.[*]

The superior court (*Seymour, J.,*) passed a decree in favor of the petitioners upon these facts, and the respondent brought the case before this court by motion in error.

*Treat* and *Blake*, for the plaintiff in error.

1. The note is void because the consideration was in part liquors unlawfully sold. Act de Intemperance, sec. 27 ; Stat.

---

[*] For the provisions of the "act for the suppression of intemperance" affecting this case, see note at the bottom of page 48, *ante*.

(Comp. 1854,) 832. The agreement that the first credits should apply solely upon the items for liquors sold was illegal and void, and being so the law would apply the credits to the oldest items, leaving a part of the items for liquors unpaid, and these entering into the note render it void. 1 Swift Dig., 213 ; 1 Smith Lead. Cases, (Hare & Wallace Ed.,) 502.

2. The note was overdue when assigned to the petitioners, and they took it as dishonored paper. They were therefore not protected by the exception in the law in favor of negotiable paper. *Nevins* v. *Townsend,* 6 Conn., 5 ; *Castle* v. *Candee,* 16 id., 224 ; *Lockwood* v. *Crawford,* 18 id., 361 ; *Culver* v. *Parish,* 21 id., 408 ; *Ayer* v. *Hutchins,* 4 Mass., 370 ; *Field* v. *Nickerson,* 13 id., 131 ; *Sylvester* v. *Crapo,* 15 Pick., 92 ; *Stevens* v. *Bruce,* 21 id., 193 ; *American Bank* v. *Jenness,* 2 Met., 288.

*Sturges,* for defendants in error.

1. The note can not be regarded as given in part for spirituous liquors sold. The agreement to apply the credits on the items for liquor was perhaps void as a mere agreement, but when the application was made under it the parties were doing what they had a right to do. A debtor may always direct as to the application of his payments, and where he neglects to the creditor may make the application. Here the application was made by both, and the court has no right to disturb it. If the consideration thus paid for the liquors can under the statute be recovered, it must be done by a direct suit for that purpose, and not in the mode here attempted.

2. The note was not overdue when negotiated. This must depend on the circumstances and on the intention of the parties as indicated by the circumstances. It was on interest. A mortgage was given to secure it a few days after it was made. And further it is found to have been expressly agreed by the parties that the note should lie, without being demanded, so long as the payees were satisfied with the security and the interest was paid. In these circumstances the note was not overdue. *Lockwood* v. *Crawford,* 18 Conn., 361 ; *Wethey* v. *Andrews,* 3 Hill, 582 ; *Goodman* v. *Harvey,* 4 Ad. & El., 870.

HINMAN, C. J. This was a bill to foreclose a mortgage originally given to Holcomb & Birdsey, and assigned by them to the petitioners. The defense to it rested entirely upon the statute regulating the sale of spirituous liquors. It was claimed that the note secured by the mortgage was given, in part at least, for liquors sold to the respondent, and was therefore void, under the express provisions of the twenty-seventh section of that law. But the superior court did not find this fact. And we think there are no circumstances detailed in the finding from which it can fairly be inferred that it ought to have been found. In the dealings of the respondent with Holcomb & Birdsey, he had at different times received from them as a purchaser a considerable quantity of liquors, but the account against him for other articles which were lawfully sold, was larger than the amount of the note, and there was an unrescinded agreement between them, made before there were any payment on the account, that the payments which should be made should be applied to the liquor account, and consequently not to the other portion of it, until the liquors were paid for. Now it is true that this was an unlawful agreement, and therefore void as a contract, just as the purchase and payment for the liquors on delivery would have been. But it shows nevertheless the intention of the parties, at the time the payments were made, to apply them exclusively to the liquor account, and excludes the idea that there was any intention to pay any portion of the lawful account. If, during the running of this account, a cask of liquor had been bought by the respondent and paid for at the time, we presume it would not be claimed that the subsequent lawful account between them to the amount of the money so paid, would be extinguished by an application which the law would make, directly contrary to the intention of all parties ; and after the lawful account was settled by a note, surely no one would claim that such note was void, or that the money paid for the liquor ought to be applied in satisfaction of it. The party receiving money as the consideration of an illegal sale, may under the statute be liable to refund it. But to apply it by law as payment to other lawful debts is, in effect,

to make a new contract for the parties against their wishes and intentions, and different from that which the law raises from the circumstance that the money may be recovered back under the statute. See *Sanford* v. *Clark*, 29 Conn., 457.

We are also of opinion that had the note been void, in consequence of its having been given for liquors, still, under the proviso to the twenty-seventh section of the act, it would, under the circumstances of this case, be a valid security in the hands of the petitioners, as bona-fide holders of the note, who have paid value for it. This of course depends upon whether it was past due at the time the petitioners took it. In the case of *Bissell* v. *Gowdy*, 31 Conn., 47, we held that if a negotiable note, given for liquor, was assigned for value after due, it was not protected in the hands of the assignee by this proviso.

We are clearly of opinion, however, that this note was not past due; and it is therefore valid in the petitioners' hands, whatever might have been its condition in the hands of the payees. It was payable on demand, and such paper in this country has often been held to be payable in a reasonable time, so that, to subject an indorser, the demand upon the maker, and the notice of the non-payment, must be made and given in what has thus been termed a reasonable time. It has never been attempted however to fix this time with any degree of precision, except in reference to the circumstances of each particular case. But these circumstances only go to show the intention of the parties in respect to the time of payment, and, therefore, they amount only to evidence of their agreement in respect to it. The cases have probably gone too far to admit of any other time for the payment of such a note than such as the circumstances show to be reasonable, by showing the intention, expectation or understanding of the parties, and thus showing the agreed time. But we think we may well hesitate to follow the cases to the extravagant length of holding that a reasonable time is a question of law, depending on the particular circumstances of each case. If there is such a time, and it is a question of law, that is, if the time is fixed by law, it would seem that it ought to be known to the courts;

and yet no court to our knowledge has attempted to fix it or declare what it is. But if it is a question of fact, depending upon the agreement and understanding of the parties, it would seem that it should be determined, like all other facts, by a jury, or by the court, where the issue is closed to the court, the court finding it in this case simply as a fact. In this case the court has found that, at the time the note was given, it was agreed between the parties to it that it might lie as long as the payees were satisfied with the security and the interest was paid. And this agreement was made known to the petitioners at the time of their purchase of it. And there was no proof that any demand of either principal or interest had ever been made. We have no doubt that, under this agreement, the note could not be considered as past due until it appeared that the payees were dissatisfied with the security; and so long as they suffered it to lie without making any demand, this of course did not appear. We should also come to the same result from the circumstances detailed in the finding. The note was on interest, and most of the cases allude to this circumstance as very strong evidence of an understanding that it should remain a continuing security for some considerable time. There was moreover the other fact, that the mortgage was given some days after the note bears date. These circumstances show, irrespective of the agreement, that the parties intended it to lie for an indefinite period. And in such a case there can be no more reasonable time than that expressed upon the face of the instrument, that is, when demanded; or, in other words, when the payees, either for the reason that they have become dissatisfied with their security, or for some other cause, should choose to call for their money. In England it seems to be settled that such a note is payable according to the literal terms of the instrument itself. The word " demand " is synonymous with " request," when used in such an instrument, and the promise, therefore, if put in other language, would be to pay when requested to do so. It was therefore held in *Brooks* v. *Mitchell*, 9 Mees. & Wels., 15, that such a note can not be treated as overdue, so as to affect an indorsee with any equities against the indorser, merely

because it was indorsed a number of years after its date, and for several years no interest had been paid on it; and it was said to be a continuing security. And so Littledale, J., in *Barough* v. *White*, 4 Barn. & Cress., 325, remarking on such a note, said that " it was intended as a continuing security, and would not be treated as overdue without evidence of payment having been demanded and refused." While this is the English law, we know that the general current of cases in this country is to the effect that such a note, negotiated a long time after made, is to be regarded as past due and dishonored. Our own court so considered it in *Nevins* v. *Townsend*, 6 Conn., 5, when indorsed eight months after given, though the case turned upon another point. So in *Castle* v. *Candee*, 16. Conn., 224, the court held that a non-negotiable note, payable on demand and indorsed by a third person, imported a promise by such person that the note should be good and collectible by the use of due diligence for a reasonable time, and that parol evidence was admissible to show that the parties expected it to lie, in order to show that it had not lain an unreasonable time. The same doctrine was applied in *Lockwood* v. *Crawford*, 18 Conn., 361, to negotiable paper. And again, in *Culver* v. *Parish*, 21 Conn., 408, it was said, citing *Lockwood* v. *Crawford*, that payment must be demanded and notice of dishonor given in a reasonable time. But whether there can be any such reasonable time, disconnected from the circumstances calculated to show what the parties intended and expected, as seems to be supposed in very many cases, we need not now determine. We have alluded to the English doctrine because it seems to conform to the plain language of the instrument itself, and to present a clear and definite rule to govern in all such cases, and leads, as we think, to a correct as well as certain result; while what is called a reasonable time, not connected with circumstances, is too vague and indefinite to control the rights of parties growing out of important mercantile instruments of this sort. But whether we shall continue longer to search after what no court has as yet been able to discover, or shall recur to the clear and precise terms of the contract itself, it will be for the court hereafter

to determine, when the question shall be so presented, as to render it necessary to decide it.

We are satisfied that there was no error in the disposition of this case, or in the judgment and decree complained of.

In this opinion the other judges concurred.