Submitted on appellant's brief March 1; reversed and
remanded April 12, 1949

# SMITH *v.* CARLETON
205 P. 2d 160

*Elton Watkins,* of Portland, for appellants.

No appearance for respondent.

BAILEY, J.

This action was brought by J. Ross Smith and Helen G. Smith against L. C. Carleton, L. Y. Cook and Garnet M. Cook, wherein plaintiffs seek to recover from defendants $5,249.99 for money had and received, $2,500 punitive damages, and $96.47 for merchandise claimed to have perished due to the acts of defendants.

The complaint alleges that in April, 1946, defendants obtained a five-year lease on a restaurant in Portland, Oregon, known as "Cottage Kitchen", and that in September of that year defendants did "wrongfully and unlawfully combine and conspire to unload said restaurant onto plaintiffs". In furtherance of such fraudulent and illegal scheme it is stated that defendants represented to plaintiffs that said restaurant was of the value of the sum of $7,500; that the average daily receipts realized by defendants from such restaurant were $135 during the time it was operated by defendants, and that the equipment was in first class

condition and had passed all inspections made by the City of Portland. It is averred that such representations were false and were known by defendants to be false, and were made by the defendants with the intent and for the purpose of inducing the plaintiffs to enter into "contracts of purchase of said premises", and that plaintiffs were deceived by the representations of defendants and by reason thereof did enter into contracts for the purchase of said restaurant. Copies of the alleged contracts are attached to the complaint as exhibits and are made a part of such complaint.

One of these contracts is signed by defendants Cook and recites that in consideration of the payment to them by the plaintiffs of $1,150 they "assign, sell, transfer and set over" to the plaintiffs all their right, title, and interest in and to a certain lunch and fountain known as "Cottage Kitchen". The other contract is between plaintiffs and defendant Carleton in which plaintiffs agree to buy and Carleton agrees to sell the Cottage Kitchen restaurant and the equipment therein for the sum of $6,350. The contract recites the receipt by Carleton of $2,350 of the purchase price and the agreement by plaintiffs to pay the balance of $4,000 in monthly installments of not less than $200 in any one installment, together with the full amount of interest due on the unpaid balance at the time of payment of each installment. This contract further provides that "Time is of the essence of this Agreement, and in the event that the Buyer shall fail to make any of said payments or any part thereof, at the times hereinabove fixed therefor, * * * then this Contract may be forthwith terminated, at the option of the Seller, without notice, and the Seller shall thereupon be entitled to the immediate possession of all of said property wherever situated."

It is further alleged that the restaurant was not worth over $3,500; that the daily receipts realized by plaintiffs from their operation of the restaurant were not over $75; that the equipment in the restaurant was not in first class condition and had not passed inspection by the City of Portland. It is then alleged that under said contracts plaintiffs did expend on said premises and paid to the defendant the sum of $5,249.99. An itemized list of such expenses and payments is set forth in the complaint. Plaintiffs then allege that they "did not meet promptly the strict performance as provided in said contract, but whenever payments were tendered and in whatever amount, whether on time or not, the defendants waived the provisions of said contract and accepted the payments without protest, until February 20, 1947, when by letter plaintiffs were informed" by the attorney for defendant Carleton that the plaintiffs were delinquent $100 on the payment due November 14, $200 on the payment due December 14, 1946, $200 on the payment which became due January 14, and $200 on the payment due February 14, 1947, and that Mr. Carleton would give them until March 3, 1947, to make such payments and in the event said payments were not made on or before March 3 Mr. Carleton would "declare the entire unpaid amount of principal and interest immediately due and collectible and will immediately take possession of the Cottage Kitchen in accordance with the terms of said agreement."

Plaintiffs allege that on March 4th they paid to defendant Carleton the sum of $346.50 and thereafter counsel for Carleton wrote to the plaintiffs acknowledging receipt of the $346.50, stating that $300 had been applied on the principal of the purchase price of the property, $18.50 as "interest on principal balance due

on contract from January 14, 1947, to February 14, 1947", and the balance paid on taxes and fire insurance. The letter further stated that plaintiffs were delinquent $200 on the payment due January 14, 1947, and $200 due on February 14, 1947, and that Mr. Carleton had granted the Smiths an extension of time until March 20th, 1947, in which to make payment of the said $400 and the $200 which would become due on the 14th day of March, and that in the event such payments were not made on or before March 20th, 1947, Mr. Carleton would declare the entire unpaid amount of principal and interest immediately due and collectible, and would immediately take possession of the Cottage Kitchen in accordance with the terms of said agreement.

It is alleged that defendant Carleton, without further notice, on March 21st telephoned to plaintiffs that he was coming over to take over the premises and for plaintiffs to close the doors; that within a few hours Carleton arrived and demanded of plaintiffs payment in full as set forth in the letter of March 6, 1947, and on failure of plaintiffs to make such payment Carleton took charge of the premises and wrongfully excluded plaintiffs therefrom. The complaint states that defendant, by accepting payments after the same became due, waived the forfeiture provision of the contract and thereafter failed to give plaintiffs "due and legal notice, or a reasonable time in which to comply with the terms of the contract, and in ruthless disregard of the rights of the plaintiffs after having lulled plaintiffs into a false position of security, and that by reason of the acts of the defendants, as aforesaid, plaintiffs have paid out the total sum of" $5,249.99.

The complaint further alleges that plaintiffs suffered special damages in the sum of $96.47, being the

value of food owned by them which perished because of the act of defendant Carleton in wrongfully taking possession of the premises, and that plaintiffs are entitled to exemplary damages in the sum of $2,500 because defendants, in taking possession of the premises, "acted fraudulently, maliciously and unlawfully and in wanton disregard of the rights and feelings of plaintiffs".

Defendants Cook were not served with summons and did not make an appearance. Carleton filed an answer in which he put in issue the material allegations of the complaint.

The case was tried to the Court and a jury. The only question submitted to the jury for its determination was whether defendant Carleton had given plaintiffs reasonable time in which to pay the delinquent installments before declaring the contract at an end and the payments made forfeited. The jury was instructed to return its verdict either for plaintiffs or for defendant Carleton, without naming any amount. It was understood between counsel for the litigants and the Court that if the verdict was in favor of plaintiffs the court should determine the amount of the judgment to be allowed them. A verdict was returned in favor of plaintiffs and the Court thereupon entered judgment in their favor and against defendant Carleton for the sum of $3,942.71.

After the entry of this judgment the Court, upon motion of defendant Carleton, set it aside and entered judgment notwithstanding the verdict in favor of defendant Carleton and against plaintiffs, in which order and judgment is the following statement:

"The Court now being of the opinion that the Court should have determined as a matter of law

the question of whether or not the defendant, L. C. Carleton, gave to the plaintiffs definite and reasonable notice to make payment of the delinquent sums due to defendant, L. C. Carleton on his conditional sales contract with plaintiffs prior to repossessing the personal property covered thereby, instead of submitting said question to the jury as a question of fact to be determined by it; and

"The Court hereby finds as a matter of law that the defendant, L. C. Carleton, did give to the plaintiffs definite and reasonable notice to make payment of the delinquent sums due to the defendant, L. C. Carleton, on his conditional sales contract with plaintiffs prior to repossessing the personal property covered thereby; and that defendant, L. C. Carleton's motion for a directed verdict should have been granted and that the verdict of the jury is otherwise than as would have been directed and the Court being fully advised, * * *"

From the order setting aside the judgment in favor plaintiffs and from the judgment entered in favor of defendant Carleton, plaintiffs have appealed.

Only one assignment of error is set forth in plaintiffs' brief. It reads as follows:

"Court committed error in allowing the motion of L. C. Carleton of defendants for judgment notwithstanding the verdict and in entering judgment, setting aside the verdict of the jury and the judgment thereon in plaintiffs' favor, and substituting judgment in favor of defendant Carleton and against plaintiffs because:

"1. Reasonable time was not given plaintiffs to make up delinquent payments due defendant Carleton;

"2. Forfeiture was not available to defendant after accepting payment of $346.50 without giving plaintiffs a new start;

"3. Equitable principles of law not applied;

"4. Question of reasonable time was one for jury and not for the Court."

The Court, in submitting the case to the jury, stated that "when a vendor waives forfeiture of a contract by accepting payments less than the amounts provided in said contract * * * he cannot insist upon and exact forfeiture on account of the delinquent payments unless and until he gives the purchaser fair, reasonable, definite, and timely notice that he insists upon the provisions of the contract and will declare a forfeiture unless the payments are made." The Court then said:

"Now, what is such reasonable and definite notice? In this case it is to be determined by the jury from all the facts and circumstances in evidence. You will understand the Court says reasonable and definite notice. Reasonable notice is such notice or confirmation of a fact as may fairly and properly be expected or required under all the particular facts and circumstances. This is a fact to be determined by the jury as reasonable men and women from all the facts and circumstances in evidence.

"If you find that the written notice of February 20th and March 6th, 1947, given by the defendant Carleton was reasonable and definite notice, then the defendant was well within his lawful rights to declare a forfeiture and repossess this property for failure to pay; and in such event your verdict would be for the defendant.

"If, on the other hand, you find that such notice as the defendant Carleton gave through his attorneys wasn't reasonable and definite notice as the Court has defined that for you, then his acts in repossessing the property when he did would be wrongful and would amount to a rescission of the contract, and in that event the plaintiffs would be entitled to recover.

* * * * *

"In this case there is no dispute between the

parties and it is admitted by all of them that Plaintiffs' Exhibit 8 and Plaintiffs' Exhibit 11, being the two letters, one dated February 20, 1947, and the other March 6, 1947, and addressed to the plaintiffs * * * were mailed to the plaintiffs by registered mail on the date each of them bears and were received by the plaintiffs in the ordinary course of mail at said address. The first letter, dated February 20, 1947, being received by plaintiffs on February 21, 1947, and the second letter, dated March 6, 1947, being received by plaintiffs on March 7, 1947."

It is undisputed that plaintiffs paid to defendant Carleton the following amounts on the dates indicated, to wit:

| | | |
|---|---|---|
| 9–13–46 | Down payment | $2,350.00 |
| 10–14–46 | Payment on Contract | 100.00 |
| 10–14–46 | Payment on Interest | 20.00 |
| 11–14–46 | Payment on Contract | 100.00 |
| 11–14–46 | Payment on Interest | 19.50 |
| 12–16–46 | Payment on Contract | 100.00 |
| 12–16–46 | Payment on Interest | 19.50 |
| 1–17–47 | Payment on Interest | 18.50 |
| 3– 4–47 | Payment on Contract | 300.00 |
| 3– 4–47 | Payment on Interest | 18.50 |
| 9–14–46 | For rent to 10–1–46 | 42.50 |
| 10– 2–46 | For rent & Water to 11–1–46 | 87.00 |
| 11– 2–46 | For rent & Water to 12–1–46 | 87.00 |
| 12– 2–46 | For rent & Water to 1–1–47 | 87.00 |
| 1– 2–47 | For rent & Water to 2–1–47 | 87.00 |
| 1–31–47 | For rent & Water to 3–1–47 | 87.00 |
| 3– 1–47 | For rent & Water to 4–1–47 | 87.00 |
| 3– 4–47 | For taxes | 11.00 |
| 3– 4–47 | For insurance | 17.00 |

Under the provisions of the contract the plaintiffs were to pay to Carleton the balance of the purchase price, to wit, $4,000, in monthly installments of not less than $200 a month, commencing on the 14th day of October, 1946. A monthly payment of only $100 was

made on the principal in October, November and December. There was, however, an interest payment in each of said months. In January and February, 1947, no payment was made on the principal but there was, on the 17th of January, an interest payment of $18.50.

The contract stipulates that the plaintiffs would pay to Carleton the rental of $85 per month for the use of the property where the restaurant is located. The above itemized statement shows that plaintiffs paid to defendant the rental to April 1, 1947, and also $2 a month for water from October 1, 1946, to April 1, 1947. These payments for water and for rental were accepted by Carleton while plaintiffs were delinquent in their installment payments.

Carleton gave the following testimony about the payments made by the plaintiffs:

"A. The only recollection I have about Smith interviewing me at all was at the time he paid me one of his payments, he said, 'Carleton, I can't give you only $100 this time, but,' he said, 'next time I think I will be able to pay the rest of it.' He never talked to me much, never had very much to do with either one of them.

"Q. He never did make you a $200 payment? A. No, sir.

"Q. The times he did, the payment was $100? A. Yes.

"Q. And then in addition to that he paid interest on the balance at six per cent? A. He paid the interest.

"Q. And at any of those times you didn't insist upon the $200 payment, but you accepted the $100 payment? A. I told him I wanted to give him a fair showing, I wanted to be fair with him, and that would be fine, he could do that.

"Q. So the next time you went there and he

couldn't pay you, so he gave you another $100 payment, and that was all right? A. It had to be all right, didn't it?

"Q. No, I am asking you what the fact is; did you take that? A. I took the money, yes, sir.

"Q. And when the next time came around and he couldn't pay you but $100, you didn't make any protest then, did you? A. Why should I make any protest about it, I either had to take it or take it up.

"Q. You didn't protest it, did you? I am just asking. A. No, I didn't fight with him about when he was going to make his payments, we got along agreeable all the way, * * *"

Defendant's letter to plaintiffs, dated February 20, 1947, demanded "immediate payment of all delinquent payments", amounting to $700 on the principal, $18.50 on interest, $11.00 on taxes, and $17.00 on insurance. They responded on March 4th with a payment of $346.50 which defendant accepted, although less than one-half of what he had demanded, and immediately gave plaintiffs 13 days in which to pay an additional sum of $600, or lose everything which they had paid to defendant, to wit, more than $3,600, in addition to $1,150 which they had paid to defendants Cook.

■■ It is a well settled rule of law that where the provision of a contract making time of the essence is waived by the vendor, he thereafter cannot exercise his rights under the forfeiture clause until he has given notice to the vendee of his intentions in this regard and has also given the vendee a reasonable time in which to perform his part of the contract. *Graham v. Merchant*, 43 Or. 294, 72 P. 1088; *Maffet v. Oregon & California Railroad Co.*, 46 Or. 443, 80 P. 489; *Ewing v. Ryan*, 113 Or. 225, 231 P. 981; *Rynhart v. Welch*, 156

Or. 48, 53, 65 P. (2d) 1420, and authorities therein cited. By accepting numerous payments after the plaintiffs were in default, Carleton waived the time essence clause of the contract. See authorities last above cited. Moreover, Carleton admits that he waived this clause of the contract.

The matter for determination here is whether the reasonableness of the time granted by Carleton to plaintiffs, in which to pay the delinquent installments on the contract, is a question of fact or one of law. The trial court first submitted it to the jury as a question of fact and, after the jury had found that Carleton had not granted plaintiffs a reasonable time in which to make these payments, the court set the verdict aside and held, as a matter of law, that the time was reasonable.

In *Hoppin v. Munsey,* 185 Cal. 678, 684, 198 P. 398, which involved a question analogous to the one here under discussion, it is stated that ''The question of what is a reasonable time depends in each case upon its own particular circumstances. It is primarily a question of fact for the determination of the trial court.'' The same rule is also stated in *Adams v. McKee Land Co. v. Dugan,* 68 Cal. App. 226, 228 P. 681; *Palmer v. Mc-Arthur,* 99 Cal. App. 510, 278 P. 1049; *Flanery v. Mudd,* (Cal. App.) 194 P. (2d) 806. In *Claus-Shear Co. v. E. Lee Hardware House,* 140 N. C. 552, 53 S. E. 433, in discussing what is reasonable time, the court said:

'' * * * The result of our examination leads us to the conclusion that what is 'reasonable time' is generally a mixed question of law and fact, not only where the evidence is conflicting but even in some cases where the facts are not disputed; and the matter should be decided by the jury upon proper instructions on the particular circumstances of each

case. Luckhart v. Ogden, 30 Cal. 557; Morrison v. Wells, 48 Kan. 494, 29 Pac. 601; Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837; Furniture Co. v. Board of Education, 58 N. J. Law, 646, 35 Atl. 397; Hill v. Hobart, 16 Me. 168; Am. Extract Co. v. Ryan, 104 Ala. 267, 15 South. 807; Murrell v. Whiting, 32 Ala. 55; Railroad v. Pumphrey, 59 Md. 390; 2 Mechem on Sales, § 1132. This seems to be so decided in England. Fray v. Hill, 2 E. C. L. 397; Doe v. Sandham, 1 T. R. 705; Ellis v. Thompson, 3 M. & W. 445.''

The following statement from In re Sternberg, 300 F. 881, is very pertinent to the question now under discussion:

''* * * It is perfectly apparent that the words 'reasonable time' have no set limits and no precise definition, and it is well settled that what is a reasonable time depends entirely upon the facts and circumstances of each particular case, the same as reasonable care depends upon the facts and circumstances of each particular case. It is a question of fact for the trier to decide. In Lockwood v. Crawford, 18 Conn. 361, Chief Justice Church said on page 372: 'What shall be deemed reasonable time, must, to some extent, be determined by the peculiar circumstances of each case.'

''In Tomlinson Carriage Co. v. Kinsella, 31 Conn. 268, Chief Justice Hinman, discussing a reasonable time, said on page 273: 'It has never been attempted, however, to fix this time with any degree of precision, except in reference to the circumstances of each particular case.'

''See, also, Oley v. Miller, 74 Conn. 304, 310, 50 Atl. 744; Hampton v. Miller, 78 Conn. 267, 61 Atl. 952.

''In all jurisdictions the courts have refused to give a definite decision as to the exact meaning of 'reasonable,' whether the question arises with reference to reasonable time, reasonable doubt, the con-

duct of reasonably prudent men, reasonable diligence, control, care, or certainty, and everywhere it has been held to be a question of fact in each case, depending upon the circumstances of each case.''

It is said in *Greenwich Bank v. Hartford Fire Ins. Co.,* 250 N. Y. 116, 131, 164 N. E. 876, that, when the facts are undisputed and different inferences cannot reasonably be drawn from the facts, what is a reasonable time is a question of law. The court follows up that statement by saying: ''This is one of those general rules, however, which is some times difficult of application, and results in the question being left to a jury when it is near the border line.''

■ The letter written by counsel for defendant Carleton, dated March 6, 1947, was sent by registered mail to plaintiffs, and, according to the return receipt, it was delivered to them on March 7th. In it defendant advised plaintiffs that ''in the event said delinquent payments are not made on or before March 20, 1947, Mr. Carleton will declare the entire unpaid amount of principal and interest immediately due and collectible and will immediately take possession of the Cottage Kitchen''. About 10:30 in the morning of March 21st, 1947, Carleton did take possession of the restaurant. The actual time given by defendant to the plaintiffs in which to pay the delinquent installments, after the receipt of that letter, was less than fourteen full days.

Although the facts in the instant case relating to the payments made by plaintiffs and the notices given by defendant to plaintiffs are not in dispute, different inferences may be drawn from the facts and circumstances surrounding such payments and notices. In other words, it cannot be held as a matter of law that defendant gave plaintiffs a reasonable time in which

to pay the delinquent installments. There are many matters to be considered in determining whether the time granted was reasonable. Each case must be decided, to a large extent, on its own particular facts.

Defendant Carleton, at the conclusion of the introduction of evidence, made a motion for a directed verdict in his favor on the following grounds:

"1. There is no evidence that the defendant Carleton acted otherwise than in accordance with the terms and conditions of his contract with the plaintiffs.

"2. The evidence is all to the effect and conclusively establishes that defendant Carleton accepted payments as they became due, on which there were unpaid installments, but prior to repossessing the restaurant he gave the plaintiffs definite and reasonable notice that if they did not pay the installments due on the contract, he would retake possession.

"3. The only question to be submitted to the jury is whether defendant Carleton gave the plaintiffs definite and reasonable notice prior to repossessing the restaurant, with the reasonableness of time being the only question to decide, and where the facts are admitted or conclusively established as they are in this case, the Court should declare the law with respect to those facts, with respect to the reasonableness of time involved.

"4. It is conclusively established by the evidence there was no wrongful repossession of the restaurant.

"5. The evidence shows plaintiffs peaceably delivered up the possession of the restaurant to defendant Carleton in accordance with the terms of the contract."

Defendant's motion to set aside the judgment in favor of plaintiffs and for judgment, notwithstanding

the verdict, in his favor was based on the same grounds that were assigned in support of his motion for a directed verdict.

■ The first four grounds assigned in support of the motion for a directed verdict relate to the question of reasonableness of the time granted by Carleton to plaintiffs. We have already pointed out that that question was one of fact. The fifth ground is based upon the assumption that plaintiffs peacefully delivered the possession of the restaurant to defendant Carleton. Plaintiff, J. Ross Smith, denied that he and his sister voluntarily surrendered the property to Carleton. He further testified that on the 21st of March Carleton "kicked" him and his sister out of the restaurant. Since there was a dispute in the facts as to whether plaintiffs peacefully delivered possession of the restaurant to the defendant, in accordance with the terms of the contract, the court did not err in refusing to direct a verdict for the defendant on such ground.

■ Section 6-707, O. C. L. A., as amended by § 1 of chapter 149, Oregon Laws 1945, provides that "* * * when a motion for a directed verdict which should have been granted has been refused and a verdict is rendered against the applicant the court may, on motion, render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment, as the case may require." It is thus apparent that since defendant's motion for a directed verdict should not have been granted, his motion for judgment, notwithstanding the verdict, should have been denied.

The Circuit Court rightly submitted to the jury the question whether or not defendant had given plaintiffs a reasonable time in which to pay the delinquent install-

ments on the contract. In setting aside the judgment entered on the verdict in favor of plaintiffs and in entering judgment, notwithstanding the verdict, in favor of defendant Carleton, the Circuit Court committed error.

The judgment appealed from is reversed and the cause remanded with instructions to the Circuit Court to set aside the judgment appealed from and to reinstate the judgment in favor of plaintiffs.

KELLY, J., concurs in the result.

HAY, J., did not participate in this decision.