# Maine Bank *vs.* John W. Smith.

Where it is the usual practice of a bank to retain their promissory notes, and those left for collection in the bank, at the time demand of payment is made upon the maker, if he resides in the same city or town, and such usage is known to the maker and indorser of a note, a demand may be sufficient, although the note remains in the bank, instead of being taken with him by the person making the demand.

If a mortgage be assigned, in writing, by the indorser of a note, as collateral security for the payment thereof, parol evidence is inadmissible, to show that the indorser was discharged from his liability upon the note, by such assignment.

If a promissory note be indorsed for the benefit of the maker, and a mortgage is made by the maker to the indorser for his indemnity, but no benefit is derived by him from the mortgage a demand upon the maker is not excused, in order to charge the indorser.

Assumpsit against the defendant, as indorser of three promissory notes, of which, one was dated *May* 5, 1836, given by *William McLellan* to the defendant, and indorsed by him and by *J. W. Appleton*, for $1200, payable in sixty days ; another dated *May* 14, 1836, for $250, payable in sixty days, given by *McLellan* to the defendant, and by him indorsed; and the third dated *June* 9, 1836, for $75, payable on demand, made by *McLellan*, payable to *Smith*, the defendant, and indorsed by him.

At the trial before Shepley J., after the proof of certain facts by the respective parties, of which a sufficient statement appears in the opinion of the Court, it was agreed, that if upon the facts, or such part of them as are legal testimony, the plaintiffs were entitled to recover, the defendant should be defaulted ; and if not so entitled, the plaintiffs should become nonsuit.

*Preble* and *Deblois*, argued for the defendant, and cited *Whittier* v. *Graffam*, 3 *Greenl.* 82 ; *Shed* v. *Brett*, 1 *Pick.* 404; *Freeman* v. *Boynton*, 7 *Mass. R.* 483 ; *Story on Agency*, § 114, 52, 53 ; *Minor* v. *Bank of Alexandria*, 1 *Peters*, 70 ; *Bank U. States* v. *Dandridge*, 12 *Wheat.* 64 ; 4 *Serg't & R.* 317 ; 5 *B. & P.* 247 ; 7 *Cranch*, 299 ; 16 *East*, 6 ; *Farley* v. *Thompson*, 15 *Mass. R.* 18; *Thorn* v. *Rice*, 15 *Maine R.* 263.

---

---

*J. Adams* and *Daveis,* for the plaintiffs, contended, that it was wholly unnecessary for the messenger to carry the note with him, in this case, because the usage of the bank had long been, not to do so, and the maker and indorser of the notes in question, were conusant of this usage. The demand and notice, in all other respects, were according to the general principles of law. This was an excepted case. *Green* v. *Darling,* 15 *Maine Rep.* 141 ; *New England Bank* v. *Lewis,* 2 *Pick.* 125 ; *Ireland* v. *Kip,* 10 *Johns. R.* 490 ; *Same parties,* 11 *Johns. R.* 231 ; *Bayley on Bills, (P. & S. Ed.)* 273 and *notes ; Wentworth* v. *Clapp,* 11 *Mass. R.* 87, and *note ; Jones* v. *Fales,* 4 *Mass. R.* 245 ; *Lincoln & Ken. Bank* v. *Page,* 9 *Mass. R.* 155 ; *City Bank* v. *Cutter,* 3 *Pick.* 414 ; *Renner* v. *Bank of Columbia,* 9 *Wheat.* 581 ; *Bank of Washington* v. *Triplett,* 1 *Peters,* 35 ; *Boston Bank* v. *Hodges,* 9 *Pick.* 420.

There was no necessity for any demand and notice, because the maker of the note had indemnified the defendant by a mortgage to him. *Mead* v. *Small,* 2 *Greenl.* 207.

The testimony of the declarations of *Newhall,* the president of the bank, is inadmissible, to show that the defendant was discharged, made, as they were, at a different time from the making of the contract, because the declarations of a stockholder or director of a corporation, are inadmissible, when not a part of the transaction. *Polleys* v. *Ocean Ins. Co.,* 2 *Shepl.* 141 ; *Ruby* v. *Abyssinian Society,* 3 *Shepl.* 306. And because it is varying a contract in writing, by parol evidence. 7 *Greenl.* 421.

The opinion of the Court — EMERY J. being interested, and therefore taking no part in the decision — was prepared by

SHEPLEY J. — A written notice, demanding payment of the two notes first named, was sent, at the proper time, to the dwellinghouse of the maker, but the notes remained in the bank. The residence of the maker was in the city. The plaintiffs were permitted to introduce evidence, that such was the invariable usage of the bank, respecting inland bills and notes ; and that the maker and the defendant had done business at the bank. The counsel for the defendant objected to the introduction of this testimony, and denied, that it could have any legal effect to charge him.

In the case of *Jones* v. *Fales*, 4 *Mass. R.* 244, testimony, to prove the usage, was admitted, not, as it was said, "to establish new law, but to prove, that the defendant had waived a condition, implied by law for his benefit." And a demand, upon one resident in the city, without the note, and on the first day of grace, was held sufficient to authorize a recovery against an indorser accustomed to do business at the bank. The like doctrine was asserted in the cases of *Widgery* v. *Munroe*, 6 *Mass. R.* 449 ; *Weld* v. *Gorham*, 10 *Mass. R.* 366 ; and *Blanchard* v. *Hilliard*, 11 *Mass. R.* 85. In the case of the *Lincoln & Kennebec Bank* v. *Page*, 9 *Mass. R.* 155, *Sewall C. J.* states the doctrine more broadly, as applicable alike to banks and to individuals. He says, " The usages adopted by individuals concerned in any course of business ; for instance, in the negotiation of promissory notes by loans obtained and renewed at banks, become, as to those parties, rules, by which their contracts are to be construed ; and in any circumstance, not ascertained by express stipulation, and especially as to privileges depending on legal implication and construction, and understood to be reserved for the particular benefit of the individual, what is known, among the parties, to be usual in their course of business, is to be taken as consented to, and to have the same effect as if inserted in their contracts." In *Shove* v. *Wiley*, 18 *Pick.* 558, it is said, that parties conversant of the custom of the bank, by transacting business there may be presumed to assent to it. Formerly, goldsmiths' notes constituted a part of the common currency of *England*, and certain usages as to the time of their presentment, were received as binding upon those interested in them. These appear to have given place to the checks of private bankers, and certain usages in like manner prevailed, and were received as binding upon those interested in them. The law in relation to bills of exchange, arose out of the custom of merchants. Very many of the rules now recognized as rules of law relating to notes as well as bills, had their origin in usage. Days of grace were "the mere creatures of usage," the number of them, and when the usual number is to be allowed, the last falling on a sacred or a holiday, and whether, and in what cases, presentment must be made during the business hours of the day, all these matters are determined by rules, which had their origin in usage.

*Tassel* v. *Lewis, Ld. Raym.* 743; *Renner* v. *Bank of Columbia,* 9 *Wheat.* 582; *City Bank* v. *Cutter,* 3 *Pick.* 414. In the case of the *Bank of Washington* v. *Triplett,* 1 *Peters,* 34, Chief Justice *Marshall* says, "the maker of a negotiable paper may fairly be presumed to be acquainted with the customary law, which governs the paper at his place of residence." In *Whitwell* v. *Johnson,* 17 *Mass. R.* 449, it is said, "if there has been such a demand as the maker was bound by, so that he had no right to refuse payment; it is not easy to see how it concerns the indorser, whether the legal forms had been complied with. or waived by the promissor"; and an indorser, not acquainted with the. usage, was held liable upon a demand binding upon the maker. In the case of *Tredick* v. *Wendell,* 1 *N. H. Rep.* 80, where the note was in a bank, a few rods from the residence of the maker, the Court held, that a demand without the note, and without any proof of usage, was a compliance "with the spirit of the rule" requiring a demand to charge the indorser. Most of the decisions in *Massachusetts,* respecting the effect of usage, in making a demand upon the maker, resident in the same place with the bank, without the note, were made while *Maine* was a part of that State, and some of them upon it as existing in institutions in this part of the State; and they must have become known to most persons dealing with them, and such persons may be presumed to intend to be governed by them. To decide now, that such usage is to have no effect upon the contract, would be to introduce a rule of decision, probably not contemplated by the parties, or supposed to be binding upon them. To deny that usage could have an influence upon the rights of parties to negotiable paper, would be to strike a blow at the foundation, upon which, much of the law, relating to such paper, rests. The case finds, that these notes were renewals of former notes, signed by the same parties, and discounted by the plaintiffs, and they must therefore have been made with the intention to have them collected by the bank. This, together with the fact, that they had done business with the bank, would authorize the conclusion, in the absence of all contradictory proof, that the usage was known to them, and that they had acquiesced in it, and had presented these notes, after a like demand and notice upon the former ones.

Maine Bank *v.* Smith.

It is insisted, in the argument for the plaintiffs, that they are entitled to recover upon the third note, without proof of any demand, because the defendant took a mortgage of certain estate, as security for indorsing these and other notes. It appears, however, in the case, that he derived no benefit from it, and in such a case, a demand is not excused.

The defendant contends, that he was discharged, upon assigning this mortgage to the plaintiffs, and he has exhibited parol evidence to prove it. The mortgaged premises are declared to be assigned " as collateral security for the payment of the within named notes endorsed by me." The legal effect would be, to make the estate conveyed, collateral to the personal liability of all the parties to the notes. And even if it could be considered as collateral to the liability of the maker only, the defendant would not thereby be discharged. There is nothing in the assignment, or in the obligation given by the president of the bank to the defendant, *indicating a different intention.* And to allow proof to be made, that part of the agreement was for a discharge of the defendant, would be to add to, and vary the effect of, the written agreements. It is said, in the case of *Kain v. Old,* 2 *B. & C.* 627, that " if the contract be in the end reduced into writing, nothing, which is not found in the writing, can be considered as part of the contract." And admitting, that the president of the bank was its legal agent, his declarations are to be received, only while in the discharge of the duties of that agency ; and when he has performed an act, he cannot qualify it by his declarations made after it has been completed. *Haven v. Brown,* 7 *Greenl.* 421. The declarations of the president, "that the transfer of the mortgage was in consideration of exonerating *Mr. Smith,*" cannot, therefore, be legally received.

The plaintiffs are entitled to judgment on the two notes first named, but not upon the last one.

*Defendant defaulted.*