# Wytheville.

## WARING V. BETTS.

### JUNE 15th, 1893.

1. NEGOTIABLE INSTRUMENTS—*Presentment and demand.*—A note payable at a bank is sufficiently presented to the endorser and last manager of the bank, at his residence after 5 P. M., where the bank has ceased to exist.
2. IDEM—*Exhibition waived.*—If on demand of payment of such note, exhibition thereof is not asked for, and the person of whom demand is made, declines on other grounds, formal presentment by actual exhibition is waived.

Argued at Richmond.    Decided at Wytheville.

Error to judgment of corporation court of Danville, rendered 6th October, 1892.

This action was debt on a negotiable note for $500 against J. L. Waring, W. L. Waring, Jr., and I. D. Blair, maker and indorsers of the said note, by E. Betts, the owner of the same. The note was negotiable and payable at the Business Men's Bank, of Richmond, Va., a young concern at the date of the execution of the note, but it went out of existence, ceased to do business, and distributed its assets before the maturity of the note.

At the time of the maturity of the note it was not paid, and the action was instituted against maker and indorsers of the same as stated.

The defence was by demurrer, and by plea of *nil debet*, and the defence is by the indorsers that the note was not presented for payment nor duly protested, and that they are not bound.

The case was tried by a jury and a special verdict rendered, which is as follows:

We, the jury, sworn to speak the truth upon the issue joined, upon our oath say that the defendant, J. L. Waring, executed a note in writing in words and figures—to wit:

[Note of defendants.]

DANVILLE, VA., APRIL 26th, 1892.

$500.

Four months after date I promise to pay to the order of myself, with interest, until paid, five hundred dollars, for value received, negotiable and payable, without offset, at the Business Men's Bank, of Richmond, Va., and we, the makers and indorsers of this note, hereby severally waive the benefit of our homestead exemption as to this debt.

J. L. WARING.

No. —, Due 26–29 Aug.

[Indorsers of note.]

And other defendants indorsed said note, "J. L. Waring, Jr., J. D. Blair;" that said note was held by W. S. Patton, Sons & Co., bankers, in Danville, on the 29th August, 1892, in their possession, in Danville; that said W. S. Patton, Sons & Co. sent the following telegram:

[Telegram of W. S. Patton, Sons & Co. to notary.]

DANVILLE, VA., AUG. 29th, 1892.

To J. F. Glenn, Cashier Merchants' National Bank, Richmond, Va.:

We have failed to forward for collection note of J. L. Waring to his order, indorsed by him, W. L. Waring, Jr., and J. D. Blair, dated 26th April, 1892, payable four months, at Business

Men's Bank, Richmond, Va., for five hundred dollars.    Will
send it to you by messenger to-day.    In meantime demand
payment of it in bank hours, and, if not paid, have it protested
to-day.    Protect us.

W. S. PATTON, SONS & CO.

Which was received by John F. Glenn, cashier of Merchants'
National Bank, Richmond, Va., (one of the witnesses of Rich-
mond) between 1 and 2 P. M. on 29th August, 1892; that said
John F. Glenn, as a notary public for the city of Richmond,
made a demand on W. L. Waring, Jr., one of the defendants,
showing him said writing describing said note, at room 5,
Hanewinckel Building, at 2:30 P. M. on the 29th August,
1892, for the payment of said note, and he declined to pay it,
and said W. L. Waring, Jr., said that he was not authorized to
represent said Business Men's Bank; that the funds of the
bank had all been distributed; that there were no assets of the
bank in his hands; that the only place of business the said
Business Men's Bank had on the 29th August, 1892, was at
No. 5 Hanewinckel Building, Richmond, Va.; that W. L.
Waring, Jr., was the principal manager of said Business Men's
Bank affairs on the 29th August, 1892; that previous to the
29th August, 1892, the Business Men's Protective Union, under
whose charter the Business Men's Bank was doing business,
had determined to cease to do banking business, and had dis-
tributed its assets; that at or subsequent hour on the 29th
August, 1892, at 5:30 P. M., said John F. Glenn went to the
said office of W. L. Waring, Jr., No. 5 Hanewinckel Building,
with the said note in his possession, which had been brought
to him by W. F. Patton, one of the firm of W. S. Patton, Sons
& Co., after 5 P. M., on August 22, 1892, to demand payment
of said note, and not finding said W. L. Waring, Jr., in at that
time, went immediately to the home of said W. L. Waring,
Jr., to demand payment, but did not find him at his residence,
whereupon said John F. Glenn, as notary public, protested said

note, and gave legal notice of protest, as set out in the following protest:

[Protest.]

VIRGINIA—CITY OF RICHMOND—TO WIT:

Know all men by these presents, that I, John F. Glenn, a notary public in and for the city aforesaid, duly commissioned and qualified, at the request of the cashier of the Merchants' National Bank, of Richmond, on the 29th day of August, in the year of our Lord, 1892, presented the note, a copy of which is the reverse of this written at the place of business, and, also, at the residence of W. L. Waring, Jr., former vice-president of the Business Men's Bank, at which bank said note is payable, the said Business Men's Bank being no longer in existence, and not having an office or other place of business, and demanded payment of the same, the period limited having expired. I also made diligent search and inquiry in order to demand payment of the maker, but was not able to find that the said maker or said note, he being a non-resident, had no office or place of business in the city aforesaid. Wherefore I, the said notary, do hereby protest the said note, as well against the indorsers as against the maker aforesaid, and all others whom it did and may concern, for all loss, damages, principal, interest, costs, and charges sustained, or to be sustained, by reason of the non-payment aforesaid, and I, thereupon, on the same day, addressed written notices to the indorsers of the said note, informing them of the demand, non-payment, and protest and dishonor thereof, and that the holders look to them for its payment, and directed one to each indorser at his postoffice address as follows: .

W. L. Waring, Jr., City of Richmond.
J. D. Blair, Danville, Virginia.

Paid postage and deposited them in the postoffice in this city, to be forwarded by first mail.

In testimony of all which I have hereunto subscribed my name and affixed my notarial seal at the city of Richmond aforesaid, the day and year aforesaid.

J. F. GLENN,

Notary Public, Richmond, Va.

Notarial charges, $3.

That no part of said note and costs of protest has been paid; that at the time said John F. Glenn demanded payment of said note at 2:30 P. M. August 29th, 1892, W. L. Waring, Jr., did not demand the production of the note sued on in this suit; that J. L. Waring and J. D. Blair resided in Danville on the 29th August, 1892, and neither had a place of business in Richmond, Va., but whether or not, upon the whole matter aforesaid, the issue joined be for the plaintiff or for the defendant, we, the jury, do not know, and, therefore, we pray the advice of the court, and if, upon the whole matter, it shall seem to the court that the issue is for the plaintiff upon said issue, and, in that case, we assess the damages of the plaintiff $503, with interest thereon from 29th August, 1892. But if, upon the whole matter aforesaid, it shall seem to the court that the issue is for the defendant, then we, the jury, find for the defendants, W. L. Waring and J. D. Blair, upon the said issue; that the business hours of the banks in Richmond were from 9 A. M. to 3 P. M., though it is the custom in Richmond to demand payment after 3 P. M.

H. A. COBB, Foreman.

Whereupon it appearing to the court that the law was for the plaintiff, judgment was rendered for the plaintiff, against the defendant in the sum of $503, with interest from the 29th day of August, 1892, as by the jury in their verdict ascertained. Whereupon the plaintiff applied for and obtained a writ of error to this court.

*Berkeley & Harrison*, for plaintiffs in error.

*E. E. Bouldin,* for defendant in error.

LACY, J., (after stating the case) delivered the opinion of the court.

The first question arising here is that raised by the demurrer. The declaration states a good case, and sets forth that on its due day it was duly presented for payment of the sum of money therein specified, required, payment refused, and that it was duly protested, &c.

And the defendants' demurrer to the plaintiff's declaration was properly overruled.

The claim of the defendants is that there was no presentment of the note, because when payment was demanded of the indorser, W. L. Waring, Jr., manager of the late Business Men's Bank, Mr. Glenn did not have the note in his possession, and could not have presented it, but as has been seen from the facts found by the jury, payment was refused by Waring, and the note not asked for, but payment refused, and the statement made that he was not authorized to represent the bank which had ceased to do business and had distributed its assets.

Presentment of the bill or note and demand of payment should be made by an actual exhibition of the instrument itself; or at least the demand of payment should be accompanied by some clear indication that the instrument is at hand ready to be delivered, and such must really be the case. This is requisite in order that the drawer or acceptor may be able to judge (1) of the genuineness of the instrument; (2) of the right of the holder to receive payment; and (3) that he may immediately reclaim possession of, upon paying the amount. If, on demand of payment the exhibition of the instrument is not asked for, and the party of whom demand is made decline on other grounds, a formal presentment by actual exhibition of the paper is considered as waived. Dan. on Neg. Inst., p. 485, § 654, citing *Lockwood* v. *Crawford,* 18 Conn., 361, and *Fall River Union Bank* v. *Willard,* 5. Metcalf, 216.

All the parties subsequent to the principal payer are bound only as his guarantors, and promise to pay only on condition that a proper demand of payment be made, and due notice be given to them in case the note or bill is dishonored. And we repeat this as one of the fundamental principles of the law of negotiable paper; and the infrequency and the character of the circumstances which will excuse the holder from making this demand, and still preserve to him all his rights as effectually as if it were made, will illustrate the stringency of the rule itself. Parsons on notes and bills, Vol. I., 442. The question of excuse, then, will depend upon whether due diligence has been used, and presents the ordinary inquiry as to negligence. The principal excuses resolve themselves into two classes—

First. The impossibility of demand.

Second. The acts, words, or position of a party, proving that he had no right, or waived all right to the demand of the waiver of which he would avail himself.

That impossibility should excuse non-demand is obvious, for the law compels no one to do what he cannot perform. But it must be actual and not merely hypothetical; and though it need not be absolute, no slight difficulty will have this effect. Id.

The circumstances which will excuse a demand are such generally as apply to a failure to present and demand payment within the required time, not absolutely. Parsons, 444, 445.

In this case the presentment of the note was not made at bank within the usual bank hours, with the note in possession, but as we have seen, this was excused in this case (1) by the fact that there was no bank to present it at, and (2) because payment was refused upon the ground that the bank had ceased to do business, and its assets distributed, and the note was not asked for, nor required, payment being refused on other grounds, the right to have it produced must be considered as waived.

The note, however, was carried, during the day, to the place of business of the late manager of the bank, and the indorser

sought to be charged, and this being closed, it was carried to his residence, and that being also closed, it could not be presented to him, and although it was not in banking hours, it was during the day time and before the hours of rest.

When the note is payable at a bank, it is to be presented during banking hours; and the payer is allowed until the expiration of banking hours for payment. But when not to be made at bank, but to an individual, presentment may be made at any reasonable time during the day during what are termed business hours, which, it is held, range through the whole day to the hours of rest in the evening. Parsons, 447, citing *Cayuga County Bank* v. *Hune*, 2 Hill, 635; *Nelson* v. *Fotterall*, 7 Leigh, 194.

And in the case of *Fainsworth* v. *Allen*, 4 Gray, 453, a presentment made at 9 P. M. at the maker's residence, ten miles from Boston, when he and his family had retired, was held sufficient.

And in *Barclay* v. *Bailey*, 2 Camp., 527, Lord Ellenborough sustained a presentment made as late as 8 P. M. at the house of a trader.

It is only when presentment is at the residence that the time is extended into the hours of rest. If it is at the place of business, it must be during such hours when such places are customarily open, or, at least, while some one is there competent to give an answer. *Parsons*, 448.

In this case there was no presentment to the maker, who could not be found, which, however, was unnecessary under section 2842 of the Code of Virginia. The protest was in due form, and duly protested, which was authorized by section 2849 of the Code, although the said note was payable at a bank in this State. And under section 2850 is *prima facie* proof of the facts stated therein, and are substantially in accordance with the finding of the jury. It therefore appears that such presentment as was requisite was made to the indorser and late manager of the bank, and that it was impossible

to present the same at the bank named therein, as it had ceased to exist. We must, therefore, conclude that there has been sufficient diligence on the part of the plaintiff, and that the judgment of the court below in his favor was right, and should be affirmed.

JUDGMENT AFFIRMED.