[Civ. No. 2084. First Appellate District.—August 26, 1918.]

## G. A. FREUDENBERG, Appellant, v. A. J. LUCAS, Defendant; J. G. JACKSON, Respondent.

NEGOTIABLE INSTRUMENTS—PROMISSORY NOTE—DEMAND OF PAYMENT—FAILURE TO PRESENT—LIABILITY OF INDORSER.—In an action by the holder and owner against the maker and indorser of a promissory note, arising under the law as it stood before the adoption of the negotiable instrument law (Stats. 1917, c. 751), where it appeared that the note and a certificate of stock given with it as collateral security had, by mutual consent of the maker and of the indorser, who was the original payee, been delivered to a third person with instructions to hold the note and security until maturity of the note, and then if paid to deliver the note and the security to the then owner, and that, upon demand made by the plaintiff for payment at maturity, the maker refused payment on the sole ground that he had no funds and was unable to pay it, the indorser was not discharged from liability by the mere fact that the plaintiff did not have the actual and immediate physical possession of the note at the time the demand was made.

ID.—NOTICE OF DEMAND AND NONPAYMENT—SUFFICIENCY OF NOTICE TO CHARGE INDORSER.—In such case the indorser was not discharged from liability by the fact that the notice of demand and nonpayment served upon him by the plaintiff did not set forth either the presentment of the note or the fact of nonpresentment with such facts as might excuse presentment.

APPEAL from a judgment of the Superior Court of Alameda County. Everett J. Brown, Judge.

The facts are stated in the opinion of the court.

Chas. E. Davis and Robert W. Harrison, for Appellant.

A. D. Plaw, for Respondent.

THE COURT.—This is an action upon a promissory note arising under the law as it stood prior to the adoption of the negotiable instrument law. The case was tried upon an agreed statement of facts, which showed that on August 10, 1912, defendant Lucas executed and delivered to respondent Jackson his promissory note for two thousand dollars, payable to his order one year from date. At the same time Lucas delivered to Jackson as security for the payment of the note a stock certificate of a certain corporation. Thereupon, by mutual consent, the note and certificate were both delivered to one A. A. Curtis, with instructions to hold the same until the note matured, unless sooner paid, and if it were paid on the date of maturity, to deliver the note and stock certificate to the then owner of the note. Prior to maturity the note was indorsed by Jackson to one Faraday, and by Faraday to the present plaintiff. On the date of maturity plaintiff went to the office of Curtis to get the note, but was informed by those in charge that Curtis was out of town, that the note was in his safe, and that they did not know when Mr. Curtis would return. These statements were made in the presence of Lucas, of whom plaintiff then demanded payment of the note. Lucas made no demand upon plaintiff that he exhibit to him the note, but stated that he was unable to pay it because he had no funds, and that plaintiff would have to look to the indorsers for the payment thereof. In due time plaintiff served upon Jackson a notice, the material part of which is as follows:

"This is to notify you that on August 11th, 1913, payment of that certain promissory note [describing the note and indorsement] was demanded of said A. J. Lucas, but that payment thereof was refused by said Lucas for the reason, as stated by him, that said Lucas has not sufficient funds to pay it, and that therefore, as holder of said note I now look to you for the payment thereof,

"Yours etc.,
"G. A. FREUDENBERG."

Jackson having refused to pay the note, plaintiff brought this action against Lucas, as maker, and Jackson, as indorser, and has taken this appeal from that portion of the judgment denying him relief against respondent Jackson.

Counsel for respondent, in support of the decision of the lower court, contends that Jackson was discharged from his

liability as indorser for two reasons; first, because plaintiff did not have the actual and immediate physical possession of the note at the time he demanded payment of the maker; and second, because the notice did not set forth either presentment of the note or the fact of nonpresentment, with such facts as might excuse presentment. We are of the opinion, however, that neither of these two contentions can be maintained, for the reasons hereinafter stated.

The following are the provisions of the Civil Code material to the discussion:

Section 3131. "Presentment of a negotiable instrument for payment, *when necessary,* must be made as follows: . . . "

Section 3141. "A negotiable instrument is dishonored, when it is either not paid, or not accepted, according to its tenor, on presentment for the purpose, *or without presentment, where that is excused.*"

Section 3143. "A notice of dishonor may be given in any form which describes the instrument with reasonable certainty, and substantially informs the party receiving it that the instrument has been dishonored."

While there is no statutory expression in California as to what will excuse the presentment of a note, sections 3131 and 3141 above quoted clearly recognize the common-law rule that presentment under certain circumstances is unnecessary and excused. And it is admitted by respondent that where, as in the case at bar, the maker refuses payment on the sole ground that he is without funds to pay, and makes no demand that the note be exhibited to him, actual exhibition of the note to him is excused. But respondent claims that even though exhibition of the note was excused, plaintiff must have had the actual physical possession thereof, with the ability to exhibit it to Lucas had he demanded it, in order to constitute a valid demand.

The claim is highly technical and, in our opinion, without any support in logic. When, on the date of the note's maturity, Lucas and plaintiff were in Curtis' office, the note was in the same room with them, in the safe where the depositary chosen by Lucas and respondent had put it, and it was, in the eyes of the law, in plaintiff's possession, for it cannot be disputed that Curtis was on that day plaintiff's agent, and his possession was that of his principal. If exhibition of the note had been demanded, it might have taken some time to find Mr.

Curtis and to get the safe open; but there was no *legal* impediment to the production of the note by plaintiff any more than if plaintiff had brought it to Lucas in a strong box, the key of which plaintiff had inadvertently left at his home in another town. In either case the law would excuse a reasonable delay in physically producing the note, where such production was demanded; and where, as in the instant case, no such demand was made, it would be carrying technicality to a ridiculous extreme to make the validity of plaintiff's demand turn upon the wholly irrelevant question of his ability or inability to open his agent's safe.

The notice substantially informed respondent of the dishonor of the instrument, as the demand for payment and the refusal thereof for the assigned reason of want of funds were the two facts from which nonpresentment was excused; and the notice fully advised respondent of all the necessary facts from which he could draw the legal inference that the note had been dishonored within the meaning of the statute.

Judgment reversed, with direction to the lower court to enter judgment in favor of plaintiff for the unpaid balance of the note as appears from the agreed statement of facts.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 23, 1918.