PORTER v. EAST JORDAN REALTY CO.

1. NEGOTIABLE INSTRUMENTS—DEMAND OF PAYMENT—REFUSAL TO PAY.

A conversation in the office of defendant between the cashier of a bank with whom a note had been left for collection, and the secretary and manager of defendant corporation, the maker of the note, wherein the latter was informed that the bank had the note, and that it was due, and he replied that defendant could pay the interest, but could not pay the principal, because it did not have the money, *held*, to amount to a sufficient legal demand, and, on failure to pay, the note was dishonored.

2. SAME—PRODUCTION OF INSTRUMENT—WAIVER.

The provision in the negotiable instruments act (2 Comp. Laws 1915, § 6115) that the instrument must be exhibited to the person from whom payment is demanded, *held*, to be for the benefit of the maker, and that it might be waived by him.

3. SAME.

Where the maker of a note, when informed that it was due and payable, made no request for its production, and based his refusal to pay solely on other grounds, *held*, that he waived his rights under the provisions of said section requiring the production of the note, since the law will not require the doing of an idle thing.

4. APPEAL AND ERROR—QUESTION NOT RAISED IN COURT BELOW.

Where the sufficiency of the declaration was not raised in the court below it cannot be raised in this court.

5. SAME—DIRECTED VERDICT—CONFLICTING TESTIMONY.

On appeal from a directed verdict, where the testimony was in conflict, this court will treat it in the light most favorable to appellant.

Error to Charlevoix; Mayne (Frederick W.), J. Submitted April 14, 1920. (Docket No. 58.) Decided June 7, 1920.

On necessity of actual presentation of commercial paper to effect its dishonor, see note in 13 L. R. A. (N. S.) 303.
On banking custom as to demand and notice, see note in 21 L. R. A. (N. S.) 441.

Assumpsit by William P. Porter against the East Jordan Realty Company, Carl Stroebel, and William Stroebel on a promissory note. Judgment for plaintiff against defendant company alone. Plaintiff brings error. Reversed.

*Clink & Williams,* for appellant.

*Dwight L. Wilson* (*A. B. Nicholas,* of counsel), for appellees.

Carl Stroebel and William Stroebel are co-partners engaged in the hardware business at East Jordan. William. Stroebel is the vice president of defendant East Jordan Realty Company and Claude Mack, who is there engaged in the jewelry business, is its secretary and general manager. On January 28, 1913, the realty company was indebted to tne defendants Stroebel in the sum of $1,413.22. On that day it executed its promissory note in the usual form to the Stroebels for this amount payable on or before five years after date with 7 per cent. interest payable annually. Subsequently the defendants Stroebel sold the note and indorsed it to one B. E. Waterman who later sold it to the plaintiff, indorsing it without recourse to him. Some time before the note was due the plaintiff left it for collection at the State Bank of East Jordan of which Mr. Suffern was cashier. Mr. Suffern and Mr. Mack talked about the note before it was due and Mr. Mack informed Mr. Suffern that they could pay the interest but could not pay the principal.

January 28, 1918, the day the note was due, was fuelless day and the business places at East Jordan were closed. Mr. Suffern had arranged with Mr. Mack to come to Mr. Mack's store two doors from the bank that day on business connected with the realty company. They met at Mr. Mack's store. While there Mr. Suffern said to Mr. Mack that the note was due

and Mr. Mack told him again that they could pay the interest but could not pay the note.

Mr. Suffern testifies:

"I went in there to keep an appointment with him for looking over the realty company's books—or to talk with him about it—a report that he wanted to make and when I was there I just told him that the note was due, which is all the demand we ever make; we don't go at it very rough when we ask payment on anything.   *   *   *

"Why, we had talked this note over several times and neither one of us considered it necessary to be formal about the conversation, we both knew what note we had in mind all right."

At this time the note was at the bank and Mr. Mack did not demand its production and it was not produced by Mr. Suffern. Mr. Mack's refusal to pay was based entirely on the lack of funds. There is testimony that notice of dishonor of the note was given to defendants the following day. The testimony was somewhat in conflict but the trial court disposed of the case on the ground that plaintiff had failed to make a case against defendants Stroebel. We must, therefore, accept the testimony most favorable to the plaintiff and shall not set out all the conflicting claims on the facts.

This action was brought against the realty company and the Stroebels. Judgment passed by default against the company and for the defendants Stroebel, the trial judge holding that the presentment and demand for payment were insufficient to charge the indorsers. There are numerous assignments of error but counsel for plaintiff quite properly say in their brief:

"The case, as presented, has two questions:
"1. Did the conversation between Mr. Mack and Mr. Suffern constitute a legal presentment and demand of payment of the note, Exhibit A?
"2. Was it necessary that Mr. Suffern actually exhibited the note to Mr. Mack when demand was made, its exhibition not being requested at the time, and

payment being refused solely on the ground of lack of funds?"

FELLOWS, J. (*after stating the facts*). We shall first consider whether what was said and done by the parties on January 28th amounted to a demand of payment. We have not quoted all the testimony on the subject; it is to the effect that the cashier, Mr. Suffern, called the attention of Mr. Mack to the fact that the note was due that day. This was what was usually done by him in demanding payment. Mr. Mack understood full well, we think, that payment of the note was demanded. He explained to Mr. Suffern that the company did not have funds to pay the note but could pay the interest. The question is not without authority. In the leading case of *Gregg* v. *George*, 16 Kan. 546, the instrument involved was a check. The indorsee had taken it together with some money to the bank to buy St. Louis exchange. He was told that they were not selling exchange. He asked to have the check passed to his credit which was refused. He did not demand the cash and testified that he did not want money. The opinion in the case was written by Justice Brewer, then a member of that court. We quote from what was there said by him, speaking for the unanimous court:

"Waiving all question as to the matter of exchange on St. Louis, it appears that he asked the bank to credit the check to his account, and it refused. This was a dishonor of the check. It was unnecessary after that to go through the form of specifically demanding its payment in cash over the counter. Demand and refusal may be necessary; but no particular form or expression is essential to either. It is sufficient if it clearly appears that the bank, after a demand, refuses to accept the check as of the value its face indicates."

In the case of *Gilbert* v. *Dennis*, 3 Metc. (Mass.) 495, the maker of the note called on the holder on the

210—Mich.—26.

day it was due and told him he was unable to pay it, should not pay it, and desired the holders to give notice to the indorser. It was held that this was a sufficient demand. Chief Justice Shaw, speaking for the court, said:

"A note is payable at any reasonable time on demand, on the last day of grace, and if not then paid, it is dishonored, and notice may be immediately given to the indorser. *Staples* v. *Franklin Bank*, 1 Metc. 43. *Shed* v. *Brett*, 1 Pick. 401. It appears by the report, in the present case, that on the last day of grace, the promisor went to the store of the holder, where the note was, and stated that he was unable to pay, and should not pay the note, and wished the plaintiff to notify the indorser. The court are of opinion that this was a sufficient demand and refusal to constitute a dishonor of the note. There are many cases in which it is held that it is not necessary to produce and exhibit the note. As where a note is in terms, or by the tacit or express consent of the parties, payable at a bank, it is sufficient that the note is there ready to be given up on payment, should the promisor come to pay it. *State Bank* v. *Hurd*, 12 Mass. 172; *Whitwell* v. *Johnson*, 17 Mass. 449; *Saunderson* v. *Judge*, 2 H. Bl. 509. If the promisor does not go to the bank and pay the note, it is dishonored, and it would be but an idle ceremony to take the note from the files and make a demand, when there is no one on whom to make it. And should the promisor come and declare his inability to pay, his intention not to pay, and leave without payment, it is surely not less a dishonor, than if he had stayed away. The default of the promisor, in such cases, is his not paying the note at the bank; and the default of the promisor, in whatever it consists, constitutes the dishonor of the note, upon which the indorsee, if duly notified, may be legally charged. Even under the law of tender, which is extremely strict, it is held that when the party, to whom a tender is to be made, declares that he will not accept it, an actual production and offer of the money, or any other thing to be tendered, is unnecessary. In the present case, the plaintiff held the note, the promisor knew it, knew it was due, and in-

stead of waiting for the holder to come to him, he went to the holder, declared by his conduct that he knew the note was due and payable, and that the holder had the note ready to be given up, and expected and had a right to expect payment of him as promisor; and in anticipation of a presentment and express demand, declared that he could not pay the note, and departed without paying it. It does not appear that the holder did not request him to make payment; and the circumstances are such as to warrant the inference that he did. The declaration of the promisor, that he could not pay, implies that he considered the holder as looking to him for payment, which is all that was necessary, and that he anticipated a more formal offer of the note and demand of payment, by a declaration which rendered it unnecessary."

And the same court in *Whitwell* v. *Johnson,* 17 Mass. 449, said:

"Certainly an indorser is not bound to pay, without evidence of a legal demand upon the maker; but when such demand has been made, his liability occurs. Now, if the indorser has seasonable notice of the fact of non-payment, when the note is due, it must be immaterial to him in what form the demand upon the maker was made. If there had been no demand, he would not be liable; because it does not appear but that the note would have been paid, if demanded; and it is within the terms of the stipulation that such demand shall be made. But if there has been such a demand as the maker was bound by, so that he had no right to refuse payment, it is not easy to see how it concerns the indorser, whether the legal forms had been complied with, or waived by the promisor."

See, also, *In re Swift,* 106 Fed. 65; *Minturn* v. *Fisher,* 7 Cal. 573; *Tucker Manfg. Co.* v. *Fairbanks,* 98 Mass. 101; 8 C. J. p. 557; 3 R. C. L. p. 1171.

We reach the conclusion from an examination of the authorities that the evidence was sufficient to justify a finding that there had been a demand. Mr. Suffern and Mr. Mack met on the day the note was due at Mr. Mack's store, which was the office of the

realty company, on business of the realty company. When Mr. Suffern said to Mr. Mack that the note was due that day, Mr. Mack clearly understood this was a demand for payment; he so treated it and explained that payment of the note could not then be made, due to lack of funds. Both parties considered and treated it as a demand and the fact that it was couched in courteous language does not deprive it of its legal effect, or of the effect given it by both parties.

At the time payment was demanded the note was at the bank two doors away and was not produced and exhibited to Mr. Mack. He did not request its production, and placed his refusal of payment solely on the ground of inability of the company to pay. The trial judge was of the opinion that under section 76 of the negotiable instruments act (2 Comp. Laws 1915, § 6115) it was imperatively necessary that the note be physically present and exhibited to the maker in order to charge the indorser. This section provides:

"The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

But the adoption of this section of the negotiable instruments act, the making of this provision statute law, wrote no new law into the law of negotiable instruments of this State. This was the well recognized law long before the negotiable instruments law was adopted. Professor Bunker in his work on Negotiable Instruments, p. 5, well said:

"These facts are a guaranty that we have in the negotiable instruments law the legislative expression of the law theretofore determined by the courts, through a long series of years and in a multitude of decisions, barring, of course, those conflicting decisions and diverse statutes which had led to embarrassment and confusion in the administration of the law of commercial paper. It may be said, probably

without serious question, that in the enactment of this statute no essential feature of the law of negotiable instruments as theretofore determined has been eliminated."

Our inquiry with reference to this provision is as to whether it is for the benefit of the maker or the indorser, whether it is personal to the maker and may be waived by him, and upon this question the holdings of the courts before this provision was made statute law are as important as those which have been handed down since.

In *King* v. *Crowell*, 61 Me. 244, it was said by the court:

"It is true that the rule requiring the person making the demand to exhibit the evidence of debt is well settled, and well grounded in reason; and, although applicable to all written contracts on which a demand is necessary, it is, as has been well said, especially applicable to negotiable securities, which may be legally transferred to another at the very time the original payee makes the demand. But the reasons applicable to cases in which the maker offers to pay cannot apply to cases in which he not only does not offer, but absolutely refuses, to pay, and does not even express any desire to see the note.

"The idle ceremony of producing the note when the maker unqualifiedly refuses to pay is well illustrated by Chief Justice Shaw in *Gilbert* v. *Dennis*, 3 Metc. (Mass.) 497, where he says:

"'Even under the law of tender, which is extremely strict, it is held that when the party, to whom a tender is to be made, declares that he will not accept it, an actual production and offer of the money, is unnecessary.'"

In *Lockwood* v. *Crawford*, 18 Conn. 361, the question was before the court and it was said:

"But it is still claimed, that no sufficient presentment or demand of payment of the makers of the note was ever made; and that B. W. Lockwood's deposition does not conduce to prove any. We think otherwise. It is true, that it does not directly appear

that the deponent, who was the payee, presented the note in form and demanded payment; but as he had not at that time transferred it, the maker might well presume it continued in his possession, ready to be delivered up upon payment. When called upon for the balance, they did not inquire for it, nor refuse to pay, because the note was not shown to them; on the contrary, they said that they could not conveniently pay any more then, and requested the payee to draw upon them at a future time; thereby waiving, as they had right to do, a more formal demand.

"We are satisfied, therefore, that the demand of payment was legal; and that, at the time mentioned by B. W. Lockwood, the note in question, by reason of the neglect and refusal of the makers to pay it, then became dishonored."

In *Union Bank of Louisiana* v. *Lea*, 7 Rob. (La.) 75, demand was made for payment and refused because there were no funds in the bank for the purpose. The court, speaking through Justice Martin, said:

"When the notary of a bank receives a note to be protested, he goes to the drawer and demands payment; if he is answered that it will not be paid, he does not take it out of his pocket-book or out of the bundle which contains it, to present it, for that would be a vain ceremony. *Lex neminem cogit ad vana.* The cashier having said that there were no funds to pay the note, no presentation was necessary."

And in the recent case of *Hodges* v. *Blaylock*, 82 Ore. 179 (161 Pac. 396), it was said:

"If, therefore, the note should have been presented in order to constitute a valid demand for its payment, and if the plaintiff's testimony is to be believed, which was for the jury to determine, the defendant S. E. Blaylock waived an exhibition of the negotiable instrument by not asking for it, and by refusing payment on the ground that he did not then have the money, and that he needed that sum with which to support his family."

The supreme court of Virginia in *Waring* v. *Betts,* 90 Va. 46 (17 S. E. 739), said:

"Presentment of the bill or note and demand of payment should be made by an actual exhibition of the instrument itself; or at least the demand of payment should be accompanied by some 'clear indication that the instrument is at hand ready to be delivered, and such must really be the case. This is requisite in order that the drawer or acceptor may be able to judge (1) of the genuineness of the instrument; (2) of the right of the holder to receive payment; and (3) that he may immediately reclaim possession of, upon paying the amount. If, on demand of payment, the exhibition of the instrument is not asked for, and the party of whom demand is made decline on other grounds, a formal presentment by actual exhibition of the paper is considered as waived."

Ruling Case Law (3 R. C. L. p. 1204) thus states the rule:

"It certainly is essential to a proper presentment that the person making demand for payment have the instrument in his possession at the time and place of demand. The negotiable instruments law provides that 'the instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it.' It may not be necessary actually to produce the instrument, if the person having it in possession demands payment and is answered by the maker or acceptor that it will not be paid. The notary or other person need not take the instrument out of his pocket-book or portfolio and make exhibition of it, for this would be an idle ceremony if the maker or acceptor assures him in advance that payment will not be made. The production of the instrument is for the benefit of the obligor, in order that he may determine its genuineness and take it in possession, and there seems to be no sound reason why he may not waive his rights in this respect."

Corpus Juris (8 C. J. p. 560) states the rule in this language: .

"The negotiable instruments law expressly provides that the instrument must be exhibited to the person from whom payment is demanded, and, when it is paid, must be delivered up to the party paying it. But this right to have the paper produced may be waived by failure to request its production, the same as under the law merchant."

See, also, *Gallagher* v. *Roberts,* 11 Me. 489; *Maine Bank* v. *Smith,* 18 Me. 99; *Freudenberg* v. *Lucas,* 38 Cal. App. 95 (175 Pac. 482) ; *Legg* v. *Vinal,* 165 Mass. 555 (43 N. E. 518) ; Selover on Negotiable Instruments (2d Ed.), p. 263.

We do not think the cases cited by defendant's counsel militate against the rule announced in the authorities considered and cited by us. *Gilpin* v. *Savage,* 201 N. Y. 167 (94 N. E. 656, Ann. Cas. 1912A, 861), involved a demand made by telephone. The case will be found reported in 34 L. R. A. (N. S.) 417, where the editor points out that it is the only case disclosed where that question was involved. *Bayless* v. *Harris,* 124 Mo. App. 234 (101 S. W. 617), involved a demand by mail, while in *Eastman* v. *Potter,* 4 Vt. 313, the maker had asked the holder of the note to produce it. The other cases cited are equally distinguishable.

The rule of the law merchant now made statute law by the negotiable instruments act is for the benefit of the maker—that he may examine the instrument to determine its genuineness, the right of the holder to payment, and upon payment may take it up and destroy it or keep it in his possession. It is a provision personal to him and may be waived by him and is waived where he makes no request for its production and his refusal to pay is solely based on other grounds, *i. e.,* lack of funds. The law does not require the doing of idle things, and such requirements as are for the sole benefit of the maker of the note may be waived by him.

There is some discussion in defendant's brief of the

question of the sufficiency of the declaration; but this question was not raised in the court below and cannot be considered here.

We do not, of course, pass upon the credibility of the testimony. As we have stated, there is a conflict in it, but as the case was disposed of as matter of law in the court below, it became our duty to treat it in the most favorable light to plaintiff. The judgment must be reversed and a new trial granted. Plaintiff will recover costs of this court.

MOORE, C. J., and STEERE, BROOKE, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.