BOONE NATIONAL BANK, Appellant, v. W. E. EVANS et al., Appellees.

**BILLS AND NOTES:** Holdership in Due Course. The indorsee of a
1  negotiable promissory note is under no duty to show his holdership in due course *when the maker fails to sustain his plea of fraud.*

**TRIAL:** Instructions—Hopeless Conflict. A correct instruction and an
2  incorrect one on the same material issue constitute reversible error.

**BILLS AND NOTES:** Presentment—Exhibiting Instrument. An in-
3  struction to the effect that due presentment of a note is not made unless the notary public "exhibits" the instrument to the indorser is sufficient, in the absence of a request for greater elaboration.

Headnote 1:  8 C. J. p. 986.  Headnote 2:  38 Cyc. p. 1605.  Headnote 3:  8 C. J. p. 1081; 38 Cyc. p. 1696.

*Appeal from Polk District Court.*—R. G. POPHAM, Judge.

NOVEMBER 15, 1924.

REHEARING DENIED MARCH 21, 1925.

SUIT on a promissory note. The defendants pleaded fraud in the inception of the note. The cause was submitted to the jury, and a verdict returned in behalf of the defendants; and the plaintiff appeals.—*Reversed.*

*Clark & Byers,* for appellant.

*Parrish, Cohen, Guthrie & Watters, Wilson & Shaw,* and *L. S. Forrest,* for appellees.

FAVILLE, J.—It appears from the record that, in 1920, there was a corporation known as the "Lead & Zinc Storage

Company," which was engaged in operating warehouses in the state of Missouri, where lead and zinc ores were stored. The headquarters of this company were in Des Moines, and the stockholders and board of directors were largely, if not wholly, citizens of Des Moines. Another company, known as the "Combs Lead & Zinc Company," was merged with the Lead & Zinc Storage Company in June or July of 1920. Thereafter, the storage company became involved in financial difficulties, and it was desirable and necessary that it obtain money for the successful operation of its business. In the early fall of 1920, it was proposed by some of the parties interested as stockholders in the storage company, to organize a new subsidiary company, to be known as the "Lead & Zinc Sales Company." It was proposed that the Sales Company should have the exclusive right to sell the ore in the warehouse of the Storage Company, and that a certain amount of shares of stock of the Sales Company was to be turned over to the Storage Company. A meeting was held, where the plan was discussed, and the floating of the stock of the proposed Sales Company was undertaken. The stock, however, did not sell readily, and no sufficient funds were received therefrom to meet the needs of the Storage Company. Thereafter, a meeting was held at which certain persons interested in the Storage Company were present, and it was proposed that money could be raised by the floating of certain notes. It was decided that the stockholders of the Storage Company should be divided into two groups: those living on the west side in the city of Des Moines to be known as the "west group," and those on the east side to be known as the "east group;" and the proposition was that the west group was to furnish three notes of $5,000 each, and the east group four notes of $5,000 each. This plan appears to have been carried out. The notes were made payable to one McNicholas, who was the managing officer of the Storage Company, and the note in suit was signed by appellees Evans and Sargent and indorsed by the other appellees.

There is some evidence to the effect that the notes were to be used only as collateral to notes that were to be issued by the Storage Company for the purpose of borrowing money. In any event, it is apparent that the purpose of all of the parties in

the execution of said notes was to enable McNicholas to obtain money which was to be used for the purpose of repairing and improving the mining properties, which it was contemplated would be turned over to the Sales Company when it was organized.

One Bream was an indorser on the notes of the west group, including the one in suit, which, by its terms, was due November 1, 1920. Sometime in December, 1920, Bream went to the city of Boone and attempted to sell the note to appellant bank. It appears that at that time Bream was indebted to the bank in the neighborhood of something like $2,500, and that at that time he represented to the president of the bank that the note, which was payable to McNicholas, was signed by the stockholders of a company which owed Bream $2,500, and that he was authorized to discount from the proceeds of the note the said amount and apply the same on his indebtedness to appellant bank. The president of the bank refused to purchase the note at that time. Later, he called Bream on the telephone and informed him that he would purchase the note if it was found to be good. He thereupon went to Des Moines, and met Bream at the office of McNicholas, the payee of the note, and informed him of Bream's proposition, that, if the bank purchased the note, Bream's indebtedness to the bank should be deducted from the proceeds thereof; and was informed by McNicholas that such a plan was entirely satisfactory to him. Duroe, the president of the bank, also saw appellee Sargent, and asked him if the note was legitimate and proper for him to buy, and Sargent informed him it was; and in this connection it is contended that, at the time, Sargent asked Bream if Duroe had been informed of the conditions attached to the note, and was told that he had been. Duroe also saw appellee Evans and told him he was negotiating for the purchase of the note, and asked him if it was all right; and Duroe claims that Evans informed him it was all right, and to go ahead; while Evans testified that he told Duroe of the conditions attached to the note at the time. Duroe endeavored to get in touch with appellee Kinney, but was unable to do so, and returned to Boone. A few days later, Bream appeared at Boone with the note. It was discounted by appellant two per cent, in order to make it bear eight per cent interest. $2,500 of Bream's

indebtedness to the bank was paid off and discharged, and certificates of deposit aggregating $2,400, and payable to Bream, were turned over to him.

I.   Appellant moved the court to direct a verdict in its behalf. It now insists that the court should have directed such verdict for the reason that appellees have failed to return the $2,400 received from appellant bank, or to offer to do so; and that they are precluded from pleading fraud as a bar to appellant's action without so doing.

An examination of appellant's motion for a directed verdict fails to disclose that any such ground as is now urged was contained in said motion, or that said matter was in any way called to the attention of the trial court. Under such circumstances, we cannot consider the matters now urged. The trial court did not err in refusing to sustain a motion on a ground which was not embodied in said motion, and which is urged for the first time in this court.

There was no error here.

II.   It is urged that the trial court erred in striking from the record the testimony of appellee Evans, concerning the sale of the notes from the so-called east-side group, and also a certain written statement signed by appellee Evans in respect to a certain note which is claimed to have been one of those of the so-called east-side group.

We are of the opinion that the court did not err in excluding this testimony. Exhibit W, by its terms, referred to a certain note dated September 15, 1920, which was prior to the signing of either the east-side or west-side groups of notes. It also appears that the east-side notes were signed by entirely different parties than were the west-side notes, including the note in suit. The statement of appellee Evans could not, under the circumstances, be binding upon the other appellees in the case, and the statement as shown by the record had no reference whatever to the note in suit, and was in no way communicated to appellant.

There was no reversible error in the exclusion of this testimony.

III.   The court gave to the jury the following instruction:

"If, on the other hand, the jury do not find by a preponderance of the evidence that the said defendant J. McNicholas

made the representations and statements claimed in the answer

**1. BILLS AND NOTES: holder-ship in due course.** of the defendant C. N. Kinney to have been fraudulent, as an inducement to the indorsing of said note, and that the same were false, and misled the defendant C. N. Kinney to his loss in indorsing the said note, as charged in his answer, you should then find that the defendant C. N. Kinney has failed to establish his charge of fraud as a defense to this action upon said note; and if you further find that the plaintiff is a holder in due course, and that the defendant C. N. Kinney had due and legal notice of the presentment and nonpayment of the said note Exhibit A, as hereinafter instructed, then you should return a verdict in favor of the plaintiff, and against the defendant C. N. Kinney, for the amount due upon said note.''

Similar instructions were given with regard to other defendants.

Section 3060-a59, Code Supplement, 1913, provides that:

''Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course.''

The above instruction is obviously erroneous. Certainly, it cannot be the law that, if the defendant, either a maker or an indorser, had failed to establish his charge of fraud as a defense to an action upon a promissory note, the jury must still find that the plaintiff, suing on such note, is a holder in due course, in order to be entitled to recovery. If the defense failed in its claim of fraud, the plaintiff was entitled to recover, whether it was a holder in due course or not, it appearing without conflict in the evidence that it held the legal title to the note and had paid consideration therefor.

It is contended by appellees that the court correctly instructed the jury in other instructions in regard to the matter; but even if this were true, it would scarcely help appellees, be-

**2. TRIAL: instructions: hopeless conflict.** cause the instructions would be conflicting, and the jury would be left without any true guide in regard to the law on the subject.

This instruction was, in substance, repeated as to each of the defendants in the case.

We see no escape from the conclusion that it was reversible error to give it in this form, and that the error is not cured because of a correct instruction elsewhere.

The exceptions in the motion for a new trial are, we think, sufficient to preserve this question.

IV.   A question is raised in regard to the instruction in respect to the presentation of the note to the indorser.   The court left this question to the jury, and instructed it to the effect that, if the notary who made the alleged presentation "did not exhibit the said note to the indorser, that due presentment of said note was not made."   It is the contention of appellant that the court erred in this instruction.

3. BILLS AND NOTES: present-ment: exhibiting instrument.

The statute provides (Code Supplement, 1913, Section 3060-a74) :

"The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

The instruction as given complied with the requirements of the statute, and no request was made to the court to further instruct the jury in regard to what would constitute "exhibition" of the note, within the meaning of the Negotiable Instrument Act.   We find no error in the instruction as given, although it would have been better if the instruction had been amplified and enlarged by the trial court.   As bearing somewhat on the question involved, see *Porter v. East Jordan Realty Co.*, 210 Mich. 398 (177 N. W. 987) ; *Waring v. Betts*, 90 Va. 46 (17 S. E. 739).

V.   It is urged that the court should have sustained appellant's motion for a directed verdict.

The case presented a question for the jury, and was for its determination, under all of the facts and circumstances, as to whether or not appellant was a holder in due course.

In view of a retrial of the case, further comment on the evidence would not be proper.

For the error pointed out, the judgment of the district court must be, and it is,—*Reversed.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.