TOWNSEND TRUST COMPANY, a corporation of the State of Delaware,

*vs.*

WALTER HARMON REYNOLDS, sometimes known as W. Harman Reynolds, and THE NATIONAL BANK OF SMYRNA, a corporation of the United States of America, Executor under the last Will and Testament of William J. Donovan, deceased.

*New Castle, Nov. 13, 1933.*

*Harry K. Hoch* and *Ayres J. Stockly*, of the firm of Hastings, Stockly & Duffy, for complainant.

*Franklin Brockson,* for defendants.

THE CHANCELLOR: The defendants demur because, they say, the complainant has a sufficient remedy at law and when such is the case this court is without jurisdiction to proceed. The language of our statute is—"Provided, that the Chancellor shall not have power to determine any matter wherein sufficient remedy may be had by common law, or Statute, before any other Court, or jurisdiction, of this State," etc. *Revised Code* 1915, § 3844.

*Moore v. Frame,* 3 *Har.* 427, is cited to sustain the jurisdiction of the law courts in an action upon a lost negotiable note when the loss occurred after the note fell due. I do not think that it can be safely affirmed that that case so holds. The court wrote no opinion. It simply affirmed the judgment of a justice of the peace giving no reasons. The action before the justice of the peace was on a "lost

note." There was nothing in the record to show the character of the note. As indicated in one of the reported arguments, the note may not have been negotiable. The report fails to disclose what the view of the court would have been had the note been negotiable and lost after it was due.

Jurisdiction in equity suits to recover on lost negotiable instruments is well settled. Where the instrument was endorsed and lost before maturity, it appears formerly to have been the accepted view both in England and America, that the remedy was exclusively in equity. In a case, however, where the loss occurred after maturity and without the note's having been negotiated, the decisions of the English courts fell into a condition of conflict upon the question of the existence of the remedy in equity. This was due to the fluctuation of opinion as to whether in such a case indemnity was necessary as a measure of protection to the maker and therefore whether that which the law could not supply and which made its remedy insufficient, viz., the exacting of indemnity, any longer constituted an obstacle to the legal remedy. For instance in *Mossop v. Eadon,* 16 *Ves. Jr.* 430, Sir William Grant, Master of the Rolls, dismissed a bill for the payment of a promissory note, which had been cut in two parts, one being produced, and the other alleged to be lost, and offering indemnity, upon the express ground that the plaintiff could recover at law. That decision was in 1810. Sir L. Shadwell, Vice-Chancellor, remarked in *Macartney v. Graham,* 2 *Sim.* 285, decided in 1828, that *Mossop v. Eadon* was overruled by *Harsard v. Robinson,* 7 *B. & C.* 190, decided by the King's Bench in 1827. In *Harsard v. Robinson,* it was held that the indorsee of a bill, having lost it, could not in an action at law recover the amount from the acceptor, although the loss was after the bill became due and the indorsee offered indemnity. This ruling of the King's Bench cut the ground from under the decision of *Mossop v. Eadon, supra,* upon which it rested, and in that sense only overruled it. See

*Wright v. Lord Mailstone,* 1 *K. & J.* 201, 69 *Eng. Reprint,* 542.

With respect to the remedy at law, a distinction has been taken between a note that was overdue at the time of the loss and one that was not—law affording a remedy in the former case and denying it in the latter. The distinction rests upon the inability of the legal tribunal to exact indemnity, for if the note was not negotiated before and became lost after maturity, the holder of it would take it subject to all the defenses available against the payee, in which event indemnity is supposed to be unnecessary for the maker's protection. Lack of power in the law courts to exact indemnity, which is supposed to be the only obstacle to such a court's exercise of jurisdiction, thus was thought to become of no moment in such a case because there is a supposed absence of a need for indemnity. Where, however, the note was negotiated before it fell due, or was payable to bearer, and then was lost, the necessity of indemnity as a measure of protective justice to the maker is apparent, for in that case a bona fide holder would take it free of the defense of payment by the maker. The impotency of the law courts to exact indemnity and the power of equity to compel it as a condition of its relief, explains why in such a case equity is recognized as the forum to which the holder should be required to resort for his remedy.

I question very much whether the distinction which would thus make the jurisdiction of the law courts turn upon the general negotiability of the note in its time relation to the loss of it, is founded in considerations of substantial justice to the maker. In *Harsard v. Robinson, supra,* Lord Tenterden, C. J., speaking for the King's Bench advances very cogent reasons against it. Mr. Justice Story in his work on Promissory Notes paraphrases the language of Lord Tenterden and adopts the views of that able judge as his own, thus adding the weight of his own great name to that of the English judge's in repudiating the distinction.

See *Story on Promissory Notes,* § 107. "How," asks Mr. Justice Story, "is he (the maker) to be assured of the fact, either of the loss, or the destruction of the note?" Or, I might say, of the fact that it was not endorsed before maturity? Proceeding with the interrogations put by Justice Story—"Is he (the maker) to rely upon the assertion of the holder, or to defend an action at peril of costs? And if the note should afterwards appear, and a suit should be brought against him by another holder (a fact not improbable in the case of a lost bill) is he to seek for the witnesses to prove the loss, and to prove that the new plaintiff must have obtained it after it became due? Has the holder a right, by his negligence or misfortune, to cast this burden upon the maker, even as a punishment for not discharging the note, when it became due?"

After asking these questions the learned Justice then proceeds in the following section of his work (*Section* 108) as follows:

"These considerations, although put in a mere interrogatory form, present the full stress of the argument against any right of the holder to require payment, or any duty on the part of the makers to make payment, of such a negotiable note, alleged to be lost or destroyed, which may pass title by mere delivery. They have been thought sufficient in England, notwithstanding some conflict of opinion, to support the doctrine, that no remedy under such circumstances lies at law upon such a note, whether, at the time of the supposed loss or destruction, the note was overdue or not; and that the true and only remedy is in a court of equity, which, in granting relief, can at the same time compel the holder to give the maker a suitable and adequate indemnity."

Such is the view which the English courts have taken of the question. But in America, quoting further from *Story on Promissory Notes (Section* 448): "There has been some diversity of judgment, whether a suit is maintainable at law, upon a lost bill, against the maker, or not. In some States, the doctrine has been maintained in the affirmative; in others, it has been held in the negative. In

others, again, it has been held, that the holder is entitled to recover at law, provided he executes a suitable instrument of indemnity. Which doctrine will ultimately prevail in America, it is not for the commentator to conjecture. But it may be said, with great confidence, that it will be difficult to overturn, upon satisfactory grounds, the reasoning of Lord Tenterden, already referred to, in favor of the negative."

In those jurisdictions where the line of demarcation between the jurisdictions of law and equity is permitted with great reluctance to depart from the old landmarks, it is held that the jurisdiction in equity to entertain suits upon lost negotiable notes is exclusive, even though the loss occurred after maturity. Such is the rule in England as the hereinbefore citations show. In this country the same rule is followed in *Moses v. Trice*, 21 *Grat.* (*Va.*) 556, 8 *Am. Rep.* 609; *Rowley v. Ball*, 3 *Cow.* (*N. Y.*) 303; *Chewning v. Singleton*, 2 *Hill, Eq.* (*S. C.*) 371; *Butler v. Joyce*, 9 *Mackey* (20 *D. C.*) 191, 16 *L. R. A.* 205. See also 2 *Daniel, Negotiable Instruments*, (*6th Ed.*) §§ 1477, 1478; *Campbell v. Myers*, 72 *W. Va.* 429, 78 *S. E.* 671, 48 *L. R. A.* (*N. S.*) 648.

But even granting that the law courts would entertain an action upon the note here in question, does it follow that equity will refuse the aid of its jurisdiction? Where the maker of a negotiable note pays it, he is entitled to have it delivered up to him. *The Uniform Negotiable Instruments Act*, which has been adopted in this state, so provides. *Revised Code* 1915, § 2718 (*Section* 74). This provision is declaratory of the prior law. *Porter v. East Jordan Realty Co.*, 210 *Mich.* 398, 177 *N. W.* 987, 11 *A. L. R.* 963. The section has no application, however, when the instrument has been lost or destroyed. *Wooten v. Bell*, 196 *N. C.* 654, 146 *S. E.* 705. But even if the fact of loss is not allowed to deprive the holder of his right to payment, the right of the maker, if he cannot have the lost note delivered up to him, to have a satisfactory substitute in the form of indemnity delivered to him in lieu thereof, remains founded in

considerations of substantial justice. Certainly in this jurisdiction there is no power in the law courts, by reason of statute or otherwise, to exact of a plaintiff the delivery to the defendant of a satisfactory substitute for the note's surrender.

The jurisdiction of equity over lost negotiable instruments generally appears to be settled by the decided weight of both judicial and text authority. The principal debate in the books appears to be over the question of whether equity's jurisdiction is exclusive. That is a question which the instant case does not call for a decision upon. In many of the states it is undoubted that either because of statutory enactments or because of judicial decisions, the jurisdiction of the law courts has been amplified so as to embrace causes of action on lost instruments generally. But even in those states, the rule prevails by the decided weight of the decisions that the extension of the legal remedies into the field of lost instruments does not destroy the jurisdiction of equity as it theretofore existed over the same subject. See the note to *Campbell v. Myers, supra,* as reported in 48 *L. R. A. (N. S.)* 650, and cases cited therein; cf. *Fox v. Wharton,* 5 *Del. Ch.* 200; *Illinois Finance Co. v. Interstate, etc., Ass'n,* 11 *Del. Ch.* 349, 101 *A.* 870; *Hollis, Adm'r., v. Kinney,* 13 *Del. Ch.* 366, 120 *A.* 356. The result in such states is only this—another instance of a concurrent jurisdiction in the two forums.

At the worst of the matter, from the complainant's point of view, such is the situation here. Conceding without deciding that the law courts would take jurisdiction of an action upon the lost note here in question, yet equity, I conclude, also has jurisdiction to entertain a bill founded on the lost instrument. But I am not satisfied that our law courts would entertain an action in such a case. The case to which I have been referred (*Moore v. Frame, supra*) as establishing the jurisdiction at law is far from being clear to that effect.

Demurrer overruled.